CORPORATE WINGS, INC., Appellant,

v.

Randall KING d/b/a King Aviation Services, Appellee.

No. 05–87–01369–CV.

Court of Appeals of Texas, Dallas.

Feb. 23, 1989.

Frederick S. Adams, Jr., Dallas, for appellant.

Calvin C. Otte, Dallas, for appellee.

Before ENOCH, C.J., and HOWELL and BAKER, JJ.

HOWELL, Justice.

Defendant–Appellant Corporate Wings, Inc., appeals a judgment in favor of plaintiff-appellee Randall King d/b/a King Aviation Services for tortious interference with contract. The only contention on appeal is that the trial court erred in awarding exemplary damages.[1] We affirm the trial court's judgment.

## FACTS

Defendant Corporate Wings is an Ohio Corporation engaged in the business of providing aircraft related services. This case involves its facility at the Austin, Texas, airport. Plaintiff Liberty National Bank (Owner) was the owner of a 1975 "King Air" E–90 aircraft. Owner was trying to sell the aircraft through the services of co-plaintiff Randall King, an aircraft broker (Broker).

In March 1985, Owner delivered the aircraft and its log books to Defendant for purposes of demonstration and inspection. While Defendant had custody of the aircraft, it was used on a number of occasions by one Ray Menn who incurred charges with Defendant. Owner thereafter dis-

---

**1.** Defendant has also argued that the trial court erred in failing to file findings of fact and conclusions of law. We have directed the trial court to file its findings, and it has done so. Any prejudice resulting from the trial court's initial failure to timely file its findings has been cured. *Rose v. Rose,* 598 S.W.2d 889, 892 (Tex. Civ.App.—Dallas 1980, writ dism'd w.o.j.).

claimed charges of $35,047.84 incurred by Menn, and Defendant refused to return the aircraft until the charges were paid. Defendant finally agreed to release the airplane in return for $3,679.79 of the Menn charges which was paid; Defendant thereafter returned the aircraft.

However, Defendant did not return the log books until three months later. Because log books contain records of federally-required maintenance, they are critical to the sale of an aircraft. During the period that the log books were missing, their absence prevented Owner and Broker from completing a sale of the aircraft to Canadian purchasers.

Owner later brought suit for actual and exemplary damages on the basis of torts relating to the alleged wrongful withholding of the aircraft and its log books. Defendant counterclaimed for the unpaid charges for services to Menn. Broker intervened asserting a claim against Defendant for tortious interference with contract and seeking actual and exemplary damages. After a trial to the court, the trial court entered judgment awarding actual and exemplary damages both to Owner and Broker. Defendant took nothing on its counterclaim.

While this appeal was pending, Defendant settled with Owner, and Owner was dismissed from the appeal. Only Defendant's appeal from the judgment on Broker's claim remains before this court.

### EVIDENTIARY SUPPORT FOR THE EXEMPLARY DAMAGE AWARD

Defendant contends that the trial court erred in awarding exemplary damages to Broker. The trial court found that Defendant's actions were intentional, malicious, and wanton. Defendant asserts, however, that there is no evidence that it acted with malice or in such a manner as to subject it to exemplary damages. We disagree.

■ In reviewing a no evidence point, we must consider only the evidence and inferences from the evidence which support the trial court's verdict, and we must disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the trial court's finding, Defendant's no evidence challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Exemplary damages are available in an action for tortious interference with contract where the tortfeasor acted with actual malice. *Clements v. Withers*, 437 S.W.2d 818, 822 (Tex. 1969). The Supreme Court has defined actual malice as "ill-will, spite, evil motive, or purposing the injuring of another." *Clements*, 437 S.W.2d at 822. Actual malice need not be proved by direct evidence but may be inferred from other facts proved. *Magcobar North American v. Grasso Oilfield Services, Inc.*, 736 S.W.2d 787, 799 (Tex.App.—Corpus Christi 1987), *writ dism'd by agr.*, 754 S.W.2d 646 (Tex.1988).

■ Reviewing the record in accordance with the no evidence standard, we find that the general manager of Defendant's Austin operation testified that he knew the importance of log books to a potential purchaser, that Broker had requested the log books several times, and that he knew that Broker had a sale pending. During the three-month period that Defendant was contending that the log books were missing, the manager conceded that he did not diligently solicit the assistance of his staff to help him look for the log books. One of the reasons that he gave for this approach was that he was "really, really upset" about the unpaid charges incurred by Menn.

Less than one month after it yielded up the aircraft, Defendant sent a proposed agreement to both Broker and Owner which, according to the transmittal letter, "[set] forth the terms under which [Defendant] would be willing to attempt to find" the log books. The proposed agreement required that Defendant be paid $15,000.00 upon delivery of the log books. Defendant's witnesses testified that the $15,-000.00 payment was requested, at least in part, because looking for the log books would require additional effort such as flights to other maintenance shops. Defendant's manager conceded, however, that Defendant had no records that services re-

lating to the aircraft were performed anywhere but in Austin. According to his testimony, the log books were eventually found on a shelf in Defendant's Austin office. This evidence supports an inference that Defendant willfully withheld the log books in an attempt to coerce payment from Broker or Owner, and it is legally sufficient to support a finding of malice. *Cf. Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 475 (Tex.App.—Houston [1st.Dist.] 1985, no writ) (evidence that attorney, knowing how expensive a title problem could be, advised client to withhold, as a bargaining tool, his cooperation in rectifying a mistake in title held legally sufficient to support award of exemplary damages).

■ Defendant further argues, however, that there is no evidence of the corporate approval or ratification necessary to support an award of exemplary damages against a corporation. However, such is not necessary where the wrongful actions were committed, in whole or in part, by an agent whose acts are regarded as the acts of the corporation itself. Those whose conduct creates direct corporate liability include: (a) corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a corporation has confided the management of the whole or a department or division of its business. *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 406 (1934); *Treasure City v. Strange*, 620 S.W.2d 811, 814 (Tex. Civ.App.—Dallas 1981, no writ).

■ The evidence discussed above indicates that Defendant's Austin manager personally played an important role in Defendant's actions with regard to the search for the log books. He also signed on behalf of Defendant the agreement in which Defendant offered to search for the log books in return for $15,000.00. As the general manager of Defendant's Austin operation, he was an agent whose malicious acts represented acts of the corporation itself, for which the corporation could be held subject to exemplary damages.

Further, the proposed agreement was transmitted "at the request of [Defendant]" by a letter from Defendant's local counsel. Defendant's corporate counsel and secretary was aware that the letter was sent and received a copy of it. He testified that Defendant's principals were angry about the unpaid charges incurred by Menn and that Defendant was not only reluctant but "angry" to spend additional money to search for the log books without some type of agreement. Thus, there is circumstantial evidence that the wrongful withholding of the logbooks was ratified by corporate officers. We overrule Defendant's no evidence point.

## EXCESSIVENESS OF EXEMPLARY DAMAGE AWARD

Defendant also contends that the trial court's award of exemplary damages to Broker was excessive. The trial court awarded Owner $53,545.59 in actual damages and $50,000.00 in punitive damages; it awarded Broker $1,057.66 in actual damages and $15,000.00 in punitive damages.[2] Defendant complains that, while the same conduct gave rise to both Broker's and Owner's claims, the ratio between actual and exemplary damages was approximately one for one with respect to Owner and fifteen for one with respect to Broker. Defendant contends that the award to Broker is excessive, grounding its argument on the disparity in ratio.

■ Exemplary damages serve to punish the wrongdoer and to provide an example to other potential wrongdoers. *Consolidated Texas Financial v. Shearer*, 739 S.W.2d 477, 479 (Tex.App.—Fort Worth 1987, writ ref'd); *Anderson v. Trent*, 685

**2.** The trial court awarded Owner actual damages for the loss of a sale of the aircraft resulting from the lack of log books, the cost of regaining possession of the aircraft and log books, the expense of attempting to recreate the lost log books, the expense of insuring the aircraft until it was sold, and the reasonable rental value of the aircraft during the period that the log books were unavailable. The trial court based its award of actual damages to Broker on his loss of his commission resulting from the lost sale of the aircraft.

S.W.2d 712, 714 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *see also Lunsford v. Morris*, 746 S.W.2d 471, 472 (Tex.1988). Although exemplary damages must be reasonably proportioned to actual damages, there is no set ratio between actual and exemplary damages which will be considered reasonable. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Instead, the determination whether a reviewing court should condemn the relationship as unreasonable depends upon the facts of each case. *Id.* Factors to be considered by an appellate court in determining whether it should declare an award of exemplary damages unreasonable include: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.*

We would emphasize the basic function of exemplary damages. Expiation, rehabilitation and example-to-deter-others are the primary considerations; the fairness of the award from the standpoint of the injured party is but a secondary consideration. In other words, in weighing a claim of excessiveness, a reviewing court must essentially focus on the defendant's conduct. *Consolidated Texas Financial*, 739 S.W.2d at 480.

■ Here, as Defendant notes, the conduct giving rise to the damage awards to both Owner and Broker was essentially the same. The trial court has found actual damages to the respective plaintiffs of $53,545.59 plus $1,057.66, aggregating $54,603.25. It has assessed exemplary damages of $50,000.00 plus $15,000.00 totalling $65,000.00. Defendant does not attack the overall award of $65,000.00 as disproportionate to the $54,603.25 overall award of actual damages; neither do we find the proportion to be unreasonable in the aggregate. Under these circumstances, the disparity in the ratios of actual to exemplary damages awarded to Broker and Owner does not require that we find the award to Broker excessive. *Cf. Kraus v. Alamo National Bank*, 586 S.W.2d 202 (Tex.Civ.App.—Waco 1979) (two plaintiffs recovered respective actual damages of $25,803.46 and $226,000 plus exemplaries of $500,000 apiece—exemplary damages affirmed without discussion of disproportionate respective ratios), *aff'd*, 616 S.W.2d 908 (1981).

*Johnson v. Moore*, 763 S.W.2d 496 (Tex. App.—Austin 1988 n.w.h.) was an attack upon exemplary damage awards to two plaintiffs, one award representing a much greater multiple of actual damages than the other. Noting that the defendant's conduct as to the two plaintiffs was identical, the court concluded that each plaintiff's ratio of exemplary to actual damages should be comparable. The court found the higher ratio excessive and suggested a remittitur. *Id.* at 503.

We do not find any essential conflict with our decision. Insofar as there exists a seeming conflict, we decline to follow *Johnson*. It is to be noted that *Johnson* has placed its primary reliance upon *Kraus* where the Supreme Court sub silentio upheld disparate ratios of exemplary damages in favor of separate plaintiffs. Further, *Johnson* differs from our case in that our case involves a single course of misconduct (wilful refusal to return an aircraft and its log books thereby impeding the sale thereof) that operated to damage two plaintiffs whereas Johnson involved two separate, although similar and reasonably concurrent transactions. We hold that one course of misconduct merits but one punishment, therefore calling for the reviewing court to weigh the overall punishment, as we have done. Arguably, another rule might apply where the defendant engages in several separate but similar acts of misconduct.

However, we view the distinctions just stated as peripheral. We note that the *Johnson* court first concentrated on the plaintiff whose nine for one ratio of exemplary damages produced the lower ratio of exemplaries. We note that the *Johnson* court pointed out that its defendant "followed the morals of the market place instead of the strict loyalty demanded of a fiduciary." *Johnson*, 763 S.W.2d at 503.

The *Johnson* exemplary damage award was based upon a jury finding of "wilful misconduct and conscious indifference to the rights or welfare" of plaintiffs. *Id.* at 498. We also note *Johnson's* declaration "there is no proof" that the defendant was "maliciously disposed personally" toward either plaintiff.[3]

We have no difficulty with the *Johnson* opinion up to this point. A nine for one exemplary damage ratio where the basic problem was that the defendant dealt with a fiduciary in a manner that would be proper with respect to an arms length transaction but which was unlawful with respect to a cestui que trust would, under the facts of that case, appear to be a very substantial award of exemplaries. Thus, it became mandatory that the thirty-three for one ratio in favor of the other *Johnson* plaintiff be scaled back.

However, the authorities, including *Kraus,* make it clear there can be no mechanical or universal formula for the assessment of exemplary damages. *Kraus,* 616 S.W.2d at 910. Thus, we cannot agree that just because the exemplary damage ratio in favor of plaintiff A was nine for one, the ratio for plaintiff B must be nine for one also.[4] We prefer the approach that we have taken. We think it likely that the *Johnson* court would have arrived at the same place using the approach employed in this opinion.

We repeat that punishment is the primary function of exemplary damages. From this point, we hold that where there are multiple claimants, the aggregate amount of proper punishment for the same course of misconduct must first be determined. Where the aggregate is excessive, the punishment must be scaled back. All other factors being equal, it would be most logical to lay the brunt of the remittitur upon the party whose award bears the largest ratio. This test requires affirmance of the case at hand. We are not sure that its application would change *Johnson's* result.

In the case now before us, the trial court found malice whereas none was found in *Johnson.* Nevertheless, in our case the $65,000.00 aggregate of exemplaries only approximated 1.25 times the aggregate of actual damages sustained. We agree with Johnson's necessarily implied finding that the aggregate of exemplary damages there assessed was unreasonable and remittitur was necessary. In our case, the aggregate amount of punishment was not excessive. No remittiturs are in order.

It follows that where, as here, the identical misconduct produces more than one injury, the apportionment of exemplaries is not a matter of concern to the wrongdoer unless the aggregate punishment imposed is excessive. Defendant does not complain of the aggregate punishment imposed, and we are of the opinion that, viewed in the aggregate, the punishment imposed was not excessive. Based upon this finding, we hold that the apportionment of exemplary damage between co-plaintiffs was a matter of which plaintiffs only may complain. *See Garvin v. Goldsmith,* 406 S.W.2d 545, 548 (Tex.Civ.App.—Waco 1966, writ ref'd n.r. e.).

We affirm the judgment of the trial court.

---

**3.** With respect to the plaintiff receiving the lower ratio of exemplaries, the *Johnson* court concluded "we consider the jury's award ... to be reasonable." Clearly, this latter statement was imprecise. It is well settled that appellate courts do not find facts; they only unfind facts. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986). More properly, the court should have declared "we consider the jury's award ... not to be unreasonable."

**4.** The mechanical application of ratios was declared improper in *Tatum v. Preston Carter Co.,* 702 S.W.2d 186 (Tex.1986). *Johnson* skates very close to a collision with that holding.