TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-98-00473-CV








Fidelity National Title Insurance Company, Appellant




v.




Heart of Texas Title Company, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 97-092-C368, HONORABLE BURT CARNES, JUDGE PRESIDING








 Heart of Texas Title Company, appellee, sued Fidelity National Title Insurance
Company, appellant, for damages incurred when Fidelity recruited key Heart of Texas employees,
who in turn recruited some of their co-workers. Finding that Fidelity and certain Heart of Texas
employees conspired for those employees to breach their fiduciary duties to Heart of Texas, the
jury awarded actual and exemplary damages to Heart of Texas. Fidelity now appeals the award
of exemplary damages, claiming that (1) exemplary damages are not appropriate in this case
because the jury did not find that Fidelity's actions constituted fraud, and, alternatively, (2) the
exemplary damages awarded are excessive and manifestly unjust. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND


 Fidelity and Heart of Texas are rival title insurance companies. Fidelity is the
larger company, with nationwide operations; Heart of Texas operates only in Texas, primarily in
Williamson County. As indicated by corporate records introduced at trial, Fidelity wanted to
expand into the Williamson County market. From late 1995 through early 1996, Fidelity and
Heart of Texas conducted preliminary negotiations for Fidelity to purchase Heart of Texas. When
the two companies were unable to agree on a purchase price, Fidelity instead decided to open its
own office in Williamson County and to recruit staff from other title companies.

 Beginning in September 1996, seven employees left Heart of Texas for positions
at Fidelity. The reasons for these departures were the heart of the dispute at trial. Fidelity
contends that the employees were unhappy at Heart of Texas because the company was
experiencing regulatory and financial difficulties and that the employees approached Fidelity
seeking employment. Heart of Texas claims the employees left because Fidelity conspired with
certain Heart of Texas employees to recruit co-workers for Fidelity.

 Marnie Margos, an escrow closer for Heart of Texas, was the first employee to
leave for Fidelity. At Heart of Texas, she was branch manager of her office and held the title of
vice president. She testified that she was unhappy at Heart of Texas primarily because she was
not paid the commissions she had earned. Margos frequently had lunch with a friend who worked
at Fidelity. On September 16, 1996, that friend invited Steve Presti, a Fidelity vice president, to
join them, and at the end of that meal Presti offered Margos a job at Fidelity. 

 On September 24th, Margos notified Heart of Texas that she would resign at the
end of that month, and she began working at Fidelity on October 1. Margos's long-time closing
assistant, Martha Parker, chose to go to Fidelity with her, as is apparently customary in the field. 
In the weeks between the job offer and commencement of her employment at Fidelity, Margos
arranged meetings between Presti and Connie Lincoln, a fellow Heart of Texas closing agent
whom Fidelity wanted to recruit. Margos and Presti also met with J.T. Wray, Heart of Texas's
titular president (1) and principal personnel manager, about employment with Fidelity. After initially
accepting a position with Fidelity, Lincoln ultimately opted to remain at Heart of Texas. Wray
left Heart of Texas for Fidelity in January 1997, claiming that conditions at Heart of Texas were
deteriorating and that he feared his position might be eliminated.

 Heart of Texas contends that between September 1996 and January 1997, Fidelity
conspired with Wray to recruit Heart of Texas's remaining closing agents. Corporate reports and
testimony of real estate agents show that Fidelity was planning to open a Williamson County
office. Heart of Texas claims that Wray was to secure the operating staff. An extensive trail of
expense reports submitted to Fidelity during those months, along with other documents, indicates
that Presti and Wray were meeting during this period and that Wray was recruiting the Heart of
Texas employees who eventually left to work at Fidelity.

 Wray resigned from Heart of Texas on January 16. A week later, two Heart of
Texas escrow closing officers left to work at Fidelity. Two more employees--an office manager
and an escrow assistant--followed shortly thereafter. In all, seven Heart of Texas employees went
to work for Fidelity between September 1996 and February 1997. Because of the loss of staff,
Heart of Texas closed two offices and rapidly lost market share in Williamson County.

 Heart of Texas sued Fidelity, Margos, and Wray for breach of fiduciary duty, civil
conspiracy, and commercial bribery. (2) Margos and Wray were dropped from the suit on the eve
of trial, and only Fidelity remained a defendant when the case went before the jury. The jury
found that one or more employees had breached their fiduciary duties to Heart of Texas and that
Fidelity had participated in or conspired to commit those breaches of fiduciary duty. The jury
awarded only $6,700 in actual damages, a figure apparently representing some calculation of the
salaries paid to Wray and Margos by Heart of Texas during the period they were recruiting for
Fidelity. Fidelity does not challenge the award of actual damages on appeal.

 In answer to predicate questions for the award of exemplary damages, the jury
found that Fidelity did not act with malice, but that the harm suffered by Heart of Texas was the
result of breaches of fiduciary duty constituting fraud committed by the breaching fiduciary. The
jury awarded $800,000 in exemplary damages to Heart of Texas. The trial judge reduced that
award to $200,000 to comport with the statutory limits imposed by the Texas Civil Practice and
Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008 (West 1997). In two issues
on appeal, Fidelity challenges the propriety and, alternatively, the amount of exemplary damages
awarded against it.


DISCUSSION


Submission of Exemplary Damages Issue to the Jury

 In its first issue on appeal, Fidelity argues that there is no basis for an award of
exemplary damages. Fidelity approaches this argument in two ways, first arguing that exemplary
damages should not have been submitted to the jury at all, and alternatively arguing that even if
the issue was properly submitted, the answers given by the jury do not support an award in this
case. 

 Chapter 41 of the Texas Civil Practice and Remedies Code contains statutory
guidelines for the submission and award of exemplary damages. In a suit for breach of fiduciary
duty, exemplary damages may generally be awarded only when the jury makes a predicate finding
that the harm suffered by the claimant resulted from fraud or malice on the part of the defendant. 
See Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 1997). (3) Chapter 41 specifically
defines fraud as "fraud other than constructive fraud." Id. § 41.001(6). Fidelity argues that
breach of fiduciary duty is always constructive fraud and that the tort is therefore specifically
excluded as a basis of an award of exemplary damages. Since the only claim against Fidelity
submitted to the jury was conspiracy to commit a breach of fiduciary duty, Fidelity argues that
the jury should not have been able to consider the issue of exemplary damages. We disagree.

 Fidelity overstates the law when it argues that breach of fiduciary duty is always
constructive fraud and can never be actual fraud. In support of its contention, Fidelity cites to
several cases that seem to equate breach of fiduciary duty with constructive fraud. See Welder
v. Green, 985 S.W.2d 170, 175 (Tex. App.--Corpus Christi 1998, pet. denied) ("[I]n the context
before us, constructive fraud and breach of fiduciary duty amount to identical causes of action");
In re Estate of Herring, 970 S.W.2d 583, 586 n.3 (Tex. App.--Corpus Christi 1998, no pet.)
("Constructive fraud is the breach of a legal or equitable duty which the law declares fraudulent
because it violates a fiduciary relationship"); Hatton v. Turner, 622 S.W.2d 450, 458 (Tex. Civ.
App.--Tyler 1981, no writ) ("Among the types of constructive fraud is breach of a confidential
relationship"); see also Miller v. Huebner, 474 S.W.2d 587, 591 (Tex. Civ. App.--Houston [14th
Dist.] 1971, writ ref'd n.r.e.). The quotes from the foregoing authorities, however, are taken out
of context; it is more accurate to say that breach of fiduciary duty is at least constructive fraud,
but the offense may rise to the level of actual fraud in appropriate circumstances.

 The distinction between constructive and actual fraud was articulated by the Texas
Supreme Court when it wrote: "Actual fraud usually involves dishonesty of purpose or intent to
deceive, whereas constructive fraud is the breach of some legal or equitable duty which,
irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others,
to violate confidence, or to injure public interests." Archer v. Griffith, 390 S.W.2d 735, 740
(Tex. 1964). This Court has also noted the distinction between actual and constructive fraud,
writing that actual fraud "encompasses intentional breaches of duty," while constructive fraud
"encompasses those breaches that the law condemns as 'fraudulent' merely because they tend to
deceive others, violate confidences, or cause injury to public interests, the actor's mental state
being immaterial." Chien v. Chen, 759 S.W.2d 484, 494-95 (Tex. App.--Austin 1988, no writ). 
In this context, a breach of a fiduciary duty that causes injury to another is always fraudulent;
whether that fraud is actual or constructive is determined by the actor's mental state or moral
culpability. See id.

 This Court and others apparently agree that exemplary damages can be awarded
for breach of fiduciary duty, for there are numerous cases upholding such awards. See Hawthorne
v. Guenther, 917 S.W.2d 924, 936 (Tex. App.--Beaumont 1996, writ denied) ("An award of
exemplary damages is . . . supported by a finding that the partner's breach of fiduciary duty was
willful and intentional"); NRC, Inc. v. Huddleston, 886 S.W.2d 526, 533 (Tex. App.--Austin
1994, no writ) (upholding portion of district court's judgment awarding actual and punitive
damages for breach of fiduciary duty); Cheek v. Humphreys, 800 S.W.2d 596, 599 (Tex. App.--
Houston [14th Dist.] 1990, writ denied) ("Exemplary damages are proper where a fiduciary has
engaged in self-dealing"); see also Schlueter v. Schlueter, 975 S.W.2d 584, 592-93 (Tex. 1998)
(Spector, J., dissenting). We must reject Fidelity's broad claim that exemplary damages cannot
properly be submitted to the jury in an action premised on breach of fiduciary duty. In a case
such as this one, with this factual background, exemplary damages may be awarded where the jury
finds that the claimant's harm resulted from fraud or malice, for either finding establishes the
requisite "moral guilt" for a breach of fiduciary duty to rise from constructive fraud to the level
of actual fraud. We therefore hold that the trial court did not err by including the issue in the jury
charge.

 Fidelity argues alternatively that even if exemplary damages may properly be
submitted, the jury's answers to the questions before it do not support the damages awarded. The
Texas Pattern Jury Charges suggest that the jury be asked two separate questions to determine if
the plaintiff's harm resulted from fraud or from malice. See State Bar of Texas, Texas Pattern
Jury Charges PJC 110.29 (1997). (4) These are predicate questions to be answered before the jury
considers an award of exemplary damages. See id. at PJC 110.29, .30. In the first phase of this
trial, where liability was established and actual damages were assessed, the jury was presented
with the questions concerning fraud and malice that enabled it to proceed to the second phase,
where the sole question was what amount of exemplary damages should be awarded.

 Fidelity claims that the jury's answers in the first phase of the trial did not establish
that it acted with either fraud or malice, and therefore the issue of exemplary damages should not
have been submitted to the jury at all. In response to jury question four, which asked, "Do you
find by clear and convincing evidence that the harm to Heart of Texas Title Company resulted
from malice on the part of Fidelity National Title Insurance Company?" the jury answered "No." 
This question elicited an unequivocal finding that Fidelity did not act with malice. However,
question five, which was apparently intended to determine whether Fidelity acted with fraud,
presented the jury with a more complex question. It asked, "Do you find by clear and convincing
evidence [that] the harm to Heart of Texas Title was the result of a breach or breaches of fiduciary
duty that constituted fraud by the breaching fiduciary?" The jury answered this question
affirmatively, but Fidelity argues that the question did not properly submit to the jury the issue
of whether Fidelity itself acted fraudulently.

 We agree that the jury questions contained a small gap that leaves some ambiguity
in the verdict. In answering the first five questions presented to it, the jury found that (1) Heart
of Texas fiduciaries (presumably Wray and Margos) breached their fiduciary duties and caused
damages to Heart of Texas; (2) Fidelity participated in or conspired to commit those breaches of
fiduciary duty to Heart of Texas; (3) $6,700 damages would compensate Heart of Texas for actual
damages caused by the breach of fiduciary duty in which Fidelity participated; (4) Fidelity did not
act with malice; and (5) the harm to Heart of Texas was the result of breaches of fiduciary duty
that constituted fraud by Heart of Texas employees. Although the fifth question was clearly
intended to be the second predicate question on the issue of exemplary damages, the question as
submitted did not squarely ask the question that the jury needed to decide. The jury found only
that the Heart of Texas employees, with whom Fidelity conspired, committed fraudulent breaches
of fiduciary duty. The jury was not asked whether the actions of Fidelity itself constituted fraud.

 Fidelity argues that question five can only be read to find that fiduciaries of Heart
of Texas breached their fiduciary duty, a finding that would expose Margos and Wray to liability
for exemplary damages, but not Fidelity. Such an interpretation is inappropriate in the context
of this case, however, because Margos and Wray were released as defendants before the trial
began. The jury therefore had no reason to consider their personal liability for damages arising
from their acts. Any question about fraudulent behavior can only have been intended to relate to
the liability of the sole defendant in this case, Fidelity.

 Although question five might be characterized as imprecise, the jury's answers to
all the questions, taken together, leave no doubt what it intended by its verdict. To the extent
necessary, we will deem found the appropriate finding that fraud was committed by Fidelity,
pursuant to rule 279 of the Texas Rules of Civil Procedure and consistent with the jury verdict.

 It is proper for a court to deem jury findings to support a judgment if no request
or objection is raised to a question omitted from the jury charge. See Tex. R. Civ. P. 279. 
"Where . . . issues are omitted which constitute only a part of a complete and independent ground
and other issues necessarily referable to that ground are submitted and answered, the omitted
elements are deemed found in support of the judgment if . . . they are supported by some
evidence." Ramos v. Frito-Lay, Inc., 784 S.W.2d 667, 668 (Tex. 1990); see also Tex. R. Civ.
P. 279.

 At trial, neither party objected on the record to the form of question five as
submitted. Fidelity objected to the inclusion of questions relating to exemplary damages at all,
and that objection preserved its right to appeal the issue already discussed above. But Fidelity did
not object to the form of question five as it was submitted to the jury, nor did it offer a
substantially correct version of the question in the requested jury charge it submitted to the court. 
There is therefore no procedural bar to applying the deemed-finding rule.

 In this case, the jury found that Fidelity had participated in or conspired to commit
a breach of fiduciary duty to Heart of Texas and determined that Fidelity had not acted with
malice. These questions are part of an independent ground of recovery against Fidelity for
exemplary damages for malice. The trial court apparently tried to submit another independent
ground of recovery against Fidelity for exemplary damages for fraud, but failed to ask directly
whether Fidelity itself acted fraudulently. We believe the trial court intended to submit this
ground of recovery in question five, in response to which the jury found that the conspiracy to
commit fraud in which Fidelity was an active participant was actually carried out by co-conspirators Wray and Margos. Even assuming question five is inadequate, however, the question
of fraud raised in question five is "necessarily referable" to a ground of recovery for exemplary
damages for fraud against Fidelity. Therefore, a deemed finding that Fidelity's actions constituted
fraud is consistent with the judgment rendered by the trial court.

 We must next determine whether the deemed finding that Fidelity's actions
constituted fraud is supported by some evidence. See Ramos, 784 S.W.2d at 668. There was
testimony that Fidelity actively encouraged Margos to recruit her co-workers while she was still
employed at Heart of Texas. Evidence from expense reports, corporate records, and testifying
witnesses also supported Heart of Texas's theory that Fidelity was planning to open a Williamson
County office and conspired with Wray to recruit Heart of Texas employees to staff that new
office. We conclude that the record contains some evidence that could convince a reasonable jury
that the harm to Heart of Texas was caused by fraud committed by Fidelity.

 Fidelity could have prevented this deemed finding against it by objecting to the
omission of the element of Fidelity's fraud at trial or by offering a question with a substantially
correct statement of the law. Since Fidelity did not object or request, and since there is some
evidence to support the finding that Fidelity's actions constituted fraud, we hold that the trial court
must have made the finding necessary to uphold the judgment. In effect, the jury's answer to
question five is tantamount to a finding that Fidelity's actions constituted fraud. The error raised
in Fidelity's first issue is overruled.


Amount of Damages Awarded

 In its second issue on appeal, Fidelity argues that, even if we hold that exemplary
damages were properly submitted to the jury and that the jury affirmatively answered the predicate
question on fraud, the $200,000 ultimately awarded is excessive. In the second phase of the trial,
the jury returned an award of $800,000 in exemplary damages. The trial court then reduced that
award to $200,000 as required by section 41.008 of the Civil Practice and Remedies Code, which
limits the amount of recovery permitted to the greater of: (1) two times the amount of economic
damages plus any noneconomic damages, not to exceed $750,000, or (2) $200,000. See Tex. Civ.
Prac. & Rem. Code Ann. § 41.008(b). Fidelity argues that even this reduced figure, lowered 75
percent from the jury's initial assessment, is so high as to be manifestly unjust. 

 Whether an exemplary damages award is excessive is reviewed on a factual
sufficiency standard. See Peco Constr. Co. v. Guajardo, 919 S.W.2d 736, 741 (Tex. App.--San
Antonio 1996, writ denied). We may not substitute our own judgment for that of the jury, but
must assess all the evidence and reverse for a new trial only if the challenged finding is so against
the great weight and preponderance of the evidence as to be manifestly unjust. See id. at 741-42. 
In reviewing the jury's award, we must detail the relevant evidence and explain why the evidence
does or does not support the punitive damage award. See id. at 742; see also Tex. Civ. Prac. &
Rem. Code Ann. § 41.013 (West 1997).

 Generally, a jury has broad discretion to determine the amount of punitive
damages. See City of Fort Worth v. Zimlich, 975 S.W.2d 399, 410 (Tex. App.--Austin 1998, pet.
granted) (citing Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex. 1994)). In setting
its initial award of damages (which was later reduced), the jury in this case was instructed to
consider (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of
culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the
extent to which such conduct offends a public sense of justice and propriety; (6) Fidelity's net
worth; (7) the frequency of similar wrongs, if any, committed by Fidelity; and (8) the
inconvenience to, and attorney's fees and expenses incurred by, Heart of Texas as a result of
Fidelity's conduct. These instructions closely mirror the factors for jury consideration enumerated
in both the statute and the Pattern Jury Charges. See Tex. Civ. Prac. & Rem. Code Ann. §
41.011 (West 1997); Texas Pattern Jury Charges PJC 110.30.

 The evidence of Fidelity's participation in a conspiracy to encourage Heart of Texas
employees to breach their fiduciary duties, already discussed above, certainly factored into the
jury's evaluation of Fidelity's culpability and the impropriety of its conduct. It is the final three
factors, however, that appear to have formed the central basis for the jury's large exemplary
damages award. During the second phase of the trial, the jury heard evidence that Fidelity is one
of the larger title insurance companies in the nation, with an income of over $230 million in 1996. 
The jury also heard testimony that Fidelity was engaged in similar lawsuits in other states as a
result of its nationwide "predator practice" of targeting competitors' employees for recruitment. 
Heart of Texas's counsel also testified that his client had incurred over $200,000 in attorney's fees
and $70,000 in expenses to pursue the case against Fidelity. Aside from downplaying the
significance of the other similar lawsuits Fidelity was involved in, Fidelity did not seriously
dispute any of the evidence offered in the second phase of the trial. After hearing this evidence,
the jury apparently determined that an exemplary damage award of $800,000 was required to
punish Fidelity for its actions. The trial court reduced that award to $200,000. In light of the
foregoing facts, we cannot agree with Fidelity that the reduced award is unsupported by factually
sufficient evidence. 

 Fidelity emphasizes that $200,000 in exemplary damages is disproportionate to the
$6,700 actual damages awarded to Heart of Texas and that the approximately thirty-to-one ratio
between punitive and actual damages is so high as to be manifestly unjust. Although exemplary
damages must bear some reasonable relationship to actual damages, "there is no set rule of ratio
between the amount of actual and exemplary damages that will be considered reasonable." 
Ethicon, Inc. v. Martinez, 835 S.W.2d 826, 835 (Tex. App.--Austin 1992, writ denied); see also
Donnel v. Lara, 703 S.W.2d 257, 261 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). That the
$200,000 punitive award is approximately thirty times the $6,700 awarded in actual damages in
itself says nothing about the reasonableness of the award. (5)

 A reviewing court should consider whether the exemplary damages award serves
the purpose of punishing the wrongdoer and setting an example to other potential wrongdoers. 
See Corporate Wings, Inc. v. King, 767 S.W.2d 485, 488 (Tex. App.--Dallas 1989, no writ). The
reviewing court should focus on the defendant's conduct; the harm suffered by the plaintiff is but
a secondary consideration. See id. at 489. Therefore, we may de-emphasize the fact that only
$6,700 in actual damages were awarded to Heart of Texas and instead focus on what amount of
exemplary damages would sufficiently punish Fidelity for its actions and prevent similar conduct
in the future. To this end, the evidence of Fidelity's annual income was highly relevant. We
cannot say that exemplary damages of $200,000 are disproportionately high, given the $230
million income Fidelity enjoyed in 1996. We therefore overrule Fidelity's second issue and hold
that the exemplary damages awarded are not so excessive as to be manifestly unjust.

 Also in its second issue, Fidelity urges us to hold that the trial court erred by
allowing the jury to consider the attorney's fees incurred by Heart of Texas in pursuing this
lawsuit. We do not need to decide this issue, for Fidelity is unable to demonstrate any harm
suffered as a result of the jury's consideration of this factor. We may not reverse a judgment
unless the appellant can show that the error complained of "probably caused rendition of an
improper judgment." Tex. R. App. P. 44.1. At the second phase of the trial, Heart of Texas
introduced evidence that it had incurred over $200,000 in attorney's fees in this case. Even if we
assume that the jury intended to compensate Heart of Texas for every penny it had spent, only
$200,000 of the jury's $800,000 award could be attributed to attorney's fees, with the remaining
$600,000 attributable to other factors. Since the trial court reduced the jury's award to comply
with the applicable statutory limit, the final $200,000 award can be credited to the remaining,
unchallenged factors the jury was asked to consider. To show harm, Fidelity would have to
demonstrate that the jury's award would have been less than the $200,000 ultimately awarded if
it had not considered attorney's fees incurred by Heart of Texas. On the record before us,
Fidelity is unable to satisfy this requirement.


CONCLUSION


 We hold that the jury was properly allowed to entertain the question of exemplary
damages in this case, for participation in a breach of fiduciary duty can be the basis of an award
of exemplary damages where the jury finds the defendant acted with fraud or malice. Although
the jury in this case did not squarely make a finding of fraud, we hold that the deemed-finding
rule applies in order to uphold the trial court's judgment. Finally, the exemplary damages award
is factually and legally supported by the record and is not so excessive as to be manifestly unjust. 
We therefore affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: January 6, 2000

Do Not Publish

1. The evidence was disputed as to the real extent of Wray's authority as president of Heart
of Texas. The owners of Heart of Texas, Jim Goldrick and Rudy Mendoza, were actively
involved in the management and operations of the business and denied that Wray held the powers
normally associated with the title of president.
2. Because the jury found that Fidelity did not commit commercial bribery, that cause of
action does not factor into this appeal.
3. The statute provides additional criteria for when exemplary damages may be awarded,
but they apply only to wrongful death actions. See Tex. Civ. Prac. & Rem. Code § 41.003(a)(3).
4. All citations to the Pattern Jury Charges refer to the volume containing instructions on 
Business, Commerce, Insurance, and Employment.
5. Indeed, one court approved an exemplary damage award that was 2,250 times the actual
damage award of $2, a ratio that far exceeds the ratio involved in this case. See Donnel v. Lara,
703 S.W.2d at 262.



the purpose of punishing the wrongdoer and setting an example to other potential wrongdoers. 
See Corporate Wings, Inc. v. King, 767 S.W.2d 485, 488 (Tex. App.--Dallas 1989, no writ). The
reviewing court should focus on the defendant's conduct; the harm suffered by the plaintiff is but
a secondary consideration. See id. at 489. Therefore, we may de-emphasize the fact that only
$6,700 in actual damages were awarded to Heart of Texas and instead focus on what amount of
exemplary damages would sufficiently punish Fidelity for its actions and prevent similar conduct
in the future. To this end, the evidence of Fidelity's annual income was highly relevant. We
cannot say that exemplary damages of $200,000 are disproportionately high, given the $230
million income Fidelity enjoyed in 1996. We therefore overrule Fidelity's second issue and hold
that the exemplary damages awarded are not so excessive as to be manifestly unjust.

 Also in its second issue, Fidelity urges us to hold that the trial court erred by
allowing the jury to consider the attorney's fees incurred by Heart of Texas in pursuing this
lawsuit. We do not need to decide this issue, for Fidelity is unable to demonstrate any harm
suffered as a result of the jury's consideration of this factor. We may not reverse a judgment
unless the appellant can show that the error complained of "probably caused rendition of an
improper judgment." Tex. R. App. P. 44.1. At the second phase of the trial, Heart of Texas
introduced evidence that it had incurred over $200,000 in attorney's fees in this case. Even if we
assume that the jury intended to compensate Heart of Texas for every penny it had spent, only
$200,000 of the jury's $800,000 award could be attributed to at