

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00043-CV

———————————————————

WASTE MANAGEMENT OF TEXAS, INC., Appellant

V.

MARIA DODD, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR
OF THE ESTATE OF EMILIO DODD JR., DECEASED, Appellee

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 16-08887-431

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

This is a wrongful-death case arising from a fatal workplace accident. Emilio Dodd Jr., who was employed by Appellant Waste Management of Texas, Inc., was struck and killed by a vehicular trailer while directing traffic at a landfill in Denton County, Texas (the DFW Landfill). Dodd's surviving spouse, Appellee Maria Dodd,[1] acting both individually and as the independent administrator of Dodd's estate, sued the trailer-truck driver and his employer for negligence and later added a claim against Waste Management for gross negligence.[2] Maria settled with the driver and his employer, but her case against Waste Management proceeded to trial. The jury hung, so a mistrial was declared. A second jury found that Waste Management's gross negligence had caused Dodd's death and awarded Maria punitive damages. The trial court rendered judgment based on the jury's verdict.

On appeal, Waste Management argues that the evidence is legally insufficient to support the jury's gross-negligence finding. Because we conclude that the record lacks evidence to show that Dodd's death was caused by grossly negligent acts or omissions

---

[1]Dodd's father and surviving children were co-plaintiffs when the lawsuit was initially filed. But Dodd's father died during the pendency of this lawsuit, and all of Dodd's children settled their claims.

[2]Because Waste Management is a workers' compensation subscriber, it is protected by the Texas Workers' Compensation Act from liability for injuries to its employees. *See* Tex. Lab. Code Ann. § 408.001(a). But this protection does not extend to exemplary damages arising from the company's intentional or grossly negligent conduct. *See id.* § 408.001(b).

attributable to Waste Management, we reverse the trial court's judgment and render judgment that Maria take nothing.

## I. BACKGROUND

At the time of his death, Dodd worked for Waste Management as a heavy equipment operator at the DFW Landfill. The DFW Landfill is one of the busiest and biggest landfills in Texas. It accepts trash from both commercial and residential vehicles. Typically, vehicles enter with a load of trash, dump the load in the appropriate place, and exit. The constant stream of traffic and the heavy equipment continually operating and moving throughout the landfill combine to create a hectic, loud environment.

On September 6, 2016, the equipment that Dodd normally operated was broken. Dodd's supervisor Ricky White testified that he gave Dodd the option to go home—which would have meant that he received pay for only two hours of work that day—or to work on another piece of equipment. According to White, Dodd wanted to keep working, but he did not feel comfortable operating the other equipment because he lacked familiarity with it. Instead, Dodd volunteered to direct traffic.

While Dodd was directing traffic, Juan Rodriguez, who worked for a demolition company, arrived at the landfill in a Ford F-350 truck towing a large trailer full of construction debris. Rodriguez waited in line in his truck until it was his turn to receive directions regarding where to dump his debris.

After Dodd told Rodriguez where to take his load, Rodriguez pulled forward and turned his truck to the left—in Dodd's direction. According to an eyewitness, it appeared that Dodd lost his footing and then was hit and killed by Rodriguez's trailer. When pressed, Rodriguez admitted that he did not look around before pulling forward to confirm that Dodd had moved away from the truck.

Dodd's survivors sued Rodriguez and his employer for negligence. Eventually, they amended their petition to add a gross-negligence claim against Waste Management. Waste Management answered and filed a motion for summary judgment.

After the trial court denied Waste Management's summary-judgment motion, the plaintiffs settled with Rodriguez and his employer. Further, Dodd's children settled with Waste Management, leaving Maria's gross-negligence claim against Waste Management as the only surviving cause of action.[3] This claim was originally tried in August 2021, but the jury could not reach a unanimous verdict, so the trial court declared a mistrial.

A second trial was held in October 2022. At this trial, the parties offered competing versions of how Dodd had come to be positioned in the middle of the road where he was ultimately run over.

---

[3]As noted, Dodd's father, who was one of the original plaintiffs, died during the pendency of the case. *See supra* note 1.

Waste Management's version of events was based on the testimony of Dodd's supervisor, Ricky White. White testified that he had only agreed to allow Dodd to direct traffic on the condition that he would stand behind a berm (i.e., an earthen wall that is approximately two to three feet high) to shield him from traffic. According to White, he dropped off Dodd that morning behind the berm. He said that he had told Dodd to direct traffic from behind the berm, and Dodd had confirmed that he would do so. White recalled that Dodd was behind the berm when he had left that morning and when he had picked Dodd up for lunch and that Dodd had returned to his position behind the berm after White had dropped him off after lunch. White testified that he did not drop off Dodd in the middle of the road and did not know that Dodd had left the safety of the berm at any point during the day to direct traffic elsewhere.

But Maria contended that White had assigned Dodd to work in the middle of the road near the landfill's "working face"[4] even though he knew that it was dangerous. She suggested that, instead of positioning Dodd behind a berm, White had dropped him off at or near the spot where he was killed. To support this theory, she presented the testimony of two eyewitnesses who had seen Dodd directing traffic in the middle of the road at various times throughout the day. She also pointed out that neither the police report nor Waste Management's internal investigative reports concerning the accident referenced the berm or Dodd's being out of position.

---

[4]The working face is the area of the landfill where heavy equipment pushes, spreads, and compacts the waste.

Another point of contention at trial was whether White held a high enough position at Waste Management to justify treating his actions as corporate conduct, that is, whether he was employed in a "managerial capacity." At trial, Maria contended that White was a manager and presented evidence of White's numerous responsibilities at the landfill. But Waste Management pointed out that White could neither hire nor fire people; rather, that authority belonged to White's boss, Johnny Smith.[5] Further, Smith—not White—was the highest ranking employee at the DFW Landfill and was tasked with overseeing all of its operations, including financial, environmental, and safety concerns.

Ultimately, the jury found that Dodd's death resulted from Waste Management's gross negligence and assessed punitive damages of $10,000,000. Maria moved for judgment on the punitive damages, and the trial court, applying the relevant statutory cap, signed a judgment awarding Maria $2,198,913.20.[6]

Waste Management moved for judgment notwithstanding the verdict, but the trial court denied the motion. This appeal followed.

---

[5]During both opening and closing arguments, Maria's counsel told the jury that White could hire and fire people, but the undisputed evidence was to the contrary.

[6]The jury found that Maria had sustained actual economic damages of $724,456.60 and actual noneconomic damages of $900,000. Section 41.008 of the Texas Civil Practice and Remedies Code provides that an exemplary-damages award may not exceed an amount equal to the greater of (1) "two times the amount of economic damages[] plus . . . any noneconomic damages . . . not to exceed $750,000" or (2) $200,000. Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b). Thus, based on the jury's actual-damages findings, the punitive-damages award could not exceed $2,198,913.20.

6

## II. DISCUSSION

In a single issue, Waste Management argues that the evidence is legally insufficient to support the jury's finding that Dodd's death resulted from Waste Management's gross negligence. We agree.

### A. Standard of Review

In most civil cases, a plaintiff must prove her claims by a preponderance of the evidence. *See, e.g.*, *In re C.M.J.*, 573 S.W.3d 404, 409 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). In such cases, we apply the familiar standard of review to assess whether the evidence is legally sufficient to support a challenged jury finding. *See Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 318 n.2 (Tex. 2024) (discussing "familiar" legal-sufficiency standard). But gross negligence must be proved not merely by a preponderance of the evidence but by "clear and convincing evidence." *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a)(3)). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(2); *accord U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Because the standard of proof is elevated, the standard of appellate review is likewise elevated. *See Columbia Med. Ctr.*, 271 S.W.3d at 248; *McDaniel v. Dindy*, 673 S.W.3d 24, 31 (Tex. App.—Fort Worth 2023, no pet.) (corr. op.). Thus, when reviewing the legal sufficiency of the evidence supporting a claim that must be

7

proved by clear and convincing evidence, we look at all of the evidence in the light most favorable to the claimant to determine whether a reasonable trier of fact could form a firm belief or conviction that the claim is true. *See Columbia Med. Ctr.*, 271 S.W.3d at 248. If a reasonable factfinder could not form such a firm belief or conviction, then the evidence is legally insufficient to support the claim. *See id.*

## B. Gross Negligence

Gross negligence consists of both objective and subjective elements. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Plaintiffs must prove by clear and convincing evidence that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11); *Waldrip*, 380 S.W.3d at 137. "To establish the first, objective component, the plaintiff must prove that the defendant's conduct made serious injury likely." *Richard v. Wiatt*, No. 14-22-00236-CV, 2023 WL 3071161, at *2 (Tex. App.—Houston [14th Dist.] Apr. 25, 2023, no pet.) (mem. op.) (citing *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014)). "To satisfy the second, subjective component, the plaintiff must prove that the defendant was actually aware of the extreme risk but did not care." *Id.*

Further, "[a] corporation may be liable in punitive damages for gross negligence only if the corporation itself commits gross negligence." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Thus, to prevail on a gross-negligence claim against a corporation, a claimant must prove by clear and convincing evidence that the conduct giving rise to the claim is attributable to the corporation. *See id.* at 921–22. Because a corporation can act only through agents, the Texas Supreme Court "has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation." *Id.* at 921 (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 390–91 (Tex. 1997)). For example, "[a] corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent." *Id.* Additionally, "[a] corporation is . . . liable if it commits gross negligence through the actions or inactions of a vice principal." *Id.* at 922. "Vice principals" include corporate officers as well as those who have the authority to hire and fire employees or "to whom the [corporation] has confided the management of the whole or a department or a division of the business." *Id.* (citing *Hammerly Oaks, Inc.*, 958 S.W.2d at 391).

## C. Analysis

Here, Maria's gross-negligence claim against Waste Management was based on the actions or inactions of Dodd's supervisor, Ricky White. Maria alleged that directing traffic where Dodd was killed objectively involved an extreme degree of risk of being hit by a vehicle and that White—despite having actual, subjective awareness

9

of this risk—proceeded to place Dodd in this dangerous position. Even if we were to assume that White's conduct satisfied gross negligence's objective and subjective elements, Maria still could not prevail on her gross-negligence claim unless the record contained clear and convincing evidence that White's conduct was attributable to Waste Management. *See id.* at 921. But there is no evidence to support such a finding.

Because Maria did not object to the wording contained in the final jury charge, we must measure the legal sufficiency of the evidence by the charge as given. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (op. on reh'g); *see also City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (stating that when no objection was made to a jury instruction, evidence to support a finding based on the instruction should be assessed "in light of" the instruction given). Waste Management's legal-sufficiency challenge concerns the jury's "Yes" response to the charge's Question No. 2: "Do you find by clear and convincing evidence that the death of [Dodd] resulted from the gross negligence of Waste Management . . . ?" The charge's instructions for Question No. 2 explained to the jury that

> Waste Management . . . may be grossly negligent because of an act by one of its employees if, but only if—
>
> 1. Waste Management . . . authorized the doing and the manner of the act, or
>
> 2. The employee was unfit and Waste Management . . . was reckless in employing him, or
>
> 3. The employee was employed in a managerial capacity and was acting in the scope of employment, or

10

> 4. Waste Management . . . or a manager of Waste Management . . . ratified or approved the act.

At trial, Maria did not allege or attempt to prove any conduct falling within categories 1, 2, or 4. Nor does she argue on appeal that any of these categories are relevant to our legal-sufficiency analysis. Rather, she has consistently argued both at trial and on appeal that Waste Management is liable for White's grossly negligent conduct because he "was employed in a managerial capacity and was acting in the scope of employment" when it occurred.[7] Thus, to answer "Yes" to Question No. 2, the jury had to find that White was employed in a "managerial capacity" as defined in the charge. *See Osterberg*, 12 S.W.3d at 55; *see also Zimlich*, 29 S.W.3d at 71.

In this regard, the charge instructed the jury that

[a] person is a manager or is employed in a managerial capacity if—

1. That person has authority to employ, direct, and discharge an employee of Waste Management . . . , or

2. Waste Management . . . has confided to that person the management of the whole or a department or division of the business of Waste Management . . . .

Thus, under the charge's definition, to be employed in a managerial capacity, a person must either (1) have the authority to hire and fire employees or (2) have been placed in charge of Waste Management's entire business or, at a minimum, a department or

---

[7]As discussed in greater detail below, Maria alternatively—and unpersuasively—argues on appeal that even if we were to ignore White's conduct, the record nevertheless contains sufficient evidence to show grossly negligent acts and omissions attributable to Waste Management.

division thereof. But there is nothing in the record to show that White meets either of these criteria.

First, although Maria's counsel twice told the jury that White could hire and fire people, the only evidence was to the contrary.[8] White testified that he could not hire and fire people; rather, he could only make recommendations. White's boss Johnny Smith testified in the same manner:

> Q.    Did the operators report to [White]?
>
> A.    Yes.
>
> Q.    So [Dodd] . . . reported to him?
>
> A.    Yes.
>
> Q.    And could he hire and fire these people?
>
> A.    Not essentially. He could bring the information to me and we would decide. We would go to HR and figure that out.
>
> Q.    So is it your testimony that . . . White could not hire or fire people?
>
> A.    No.
>
> Q.    Not without your approval?
>
> A.    Correct.

Thus, the undisputed testimony shows that White lacked the authority to hire and fire. Even if the jury disbelieved this testimony, it is not evidence that the opposite is true.

---

[8] *See Sayles v. Senior Care Res., Inc.*, No. 02-20-00124-CV, 2021 WL 62130, at *5 (Tex. App.—Fort Worth Jan. 7, 2021, no pet.) (mem. op.) (recognizing that "argument of counsel is not evidence" (citing *Tex. Dep't of Pub. Safety v. Mendoza*, 952 S.W.2d 560, 564 (Tex. App.—San Antonio 1997, no writ))).

*See, e.g.*, *Safeway Stores, Inc. v. White*, 348 S.W.2d 162, 165 (Tex. 1961) ("While the jury was free to disbelieve [the witness's] statement that he did not realize there was any danger, his testimony in that respect is not evidence that the opposite of what he said is true."); *In re C.D.E.*, 391 S.W.3d 287, 296 n.10 (Tex. App.—Fort Worth 2012, no pet.) ("Even if the trial court, as the trier of fact, chose to disbelieve [the witness's] testimony as not credible, this does not prove that the opposite is true." (citing *Earvin v. Dep't of Fam. & Protective Servs.*, 229 S.W.3d 345, 349 (Tex. App.—Houston [1st Dist.] 2007, no pet.))).

Second, the record does not show that Waste Management placed White in charge of an entire department or division of its business. Maria asserts that White was a manager because he was "the person in charge of managing the operations department at the DFW Landfill," but the record reflects that it was Smith—not White—to whom the company had confided management of the DFW Landfill. Smith was the "district manager" and oversaw all operations. He had an office on-site, was the highest ranking person at the landfill, and—unlike White—could hire and fire employees. Thus, if Waste Management had confided the management of the DFW Landfill in anyone, it was Smith, not White.[9] *See Bennett v. Reynolds*, 315 S.W.3d 867,

---

[9]Maria cites a number of cases in which a person purportedly "in a similar or less responsible position than . . . White" was held to be a manager of a department or division of a business for gross-negligence purposes. *See Purvis v. Prattco, Inc.*, 595 S.W.2d 103, 105 (Tex. 1980); *Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 855 (Tex. App.—Fort Worth 2003, pet. denied); *Shamrock Commc'ns, Inc. v. Wilie*, No. 03-99-00852-CV, 2000 WL 1825501, at *4–5 (Tex. App.—Austin Dec. 14, 2000,

884 (Tex. 2010) (holding that the person who testified "I make the decisions" was "most likely the only vice[ ]principal and the only person whose conduct and decisions could subject the corporation to exemplary damages"); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999) (upholding vice-principal finding because the person at issue was the "highest ranking management person" at the site and had the power to hire and fire); *see also McDaniel*, 673 S.W.3d at 33 ("Acts of lower level supervisory employees . . . are not legally sufficient to support a finding of gross negligence." (citing *Qwest Int'l Commc'ns Inc. v. AT&T Corp.*, 167 S.W.3d 324, 326 (Tex. 2005))).

---

pet. denied) (not designated for publication); *Ianni v. Loram Maint. of Way, Inc.*, 16 S.W.3d 508, 526 (Tex. App.—El Paso 2000, pet. denied); *Mercy Hosp. of Laredo v. Rios*, 776 S.W.2d 626, 635 (Tex. App.—San Antonio 1989, writ denied); *Corp. Wings v. King*, 767 S.W.2d 485, 488 (Tex. App.—Dallas 1989, no writ); *Texarkana Mem'l Hosp., Inc. v. Firth*, 746 S.W.2d 494, 497–98 (Tex. App.—Texarkana 1988, no writ); *Treasure City v. Strange*, 620 S.W.2d 811, 814 (Tex. App.—Dallas 1981, no writ). However, as Waste Management points out, most of these cases predate the Texas legislature's adoption of the clear-and-convincing standard of proof for gross-negligence cases in 1995 and are thus distinguishable. *See generally R & R Contractors v. Torres*, 88 S.W.3d 685, 695, 698–99 (Tex. App.—Corpus Christi–Edinburg 2002, pet. dism'd) (discussing legislative history and adoption of clear-and-convincing standard for gross-negligence cases in 1995). Further, the lone supreme court case and the post-1995 court of appeals cases cited by Maria are distinguishable on their facts. In *Purvis*, the vice principal was the "senior employee" in charge of operating a motel overnight, *see* 595 S.W.2d at 105; in *Bush*, the vice principal was "the top nurse in the entire [m]edical [c]enter," *see* 122 S.W.3d at 855; in *Shamrock*, the vice principal was "in charge of the division of marketing" for an entire radio station, *see* 2000 WL 1825501, at *4; and in *Ianni*, the vice principals were "the highest ranked . . . employees" at the work site and could fire employees "in instances involving severe safety concerns," *see Loram Maint. of Way, Inc. v. Ianni*, 141 S.W.3d 722, 738 (Tex. App.—El Paso 2004), *rev'd*, 210 S.W.3d 593 (Tex. 2006). Thus, unlike White, the employees found to be vice principals in these cases were clearly either the highest ranking person in a department or the senior employee at a specific work site.

To support her contention that White qualified as a manager, Maria points to his title as "Landfill Operations Manager," his testimony that he was "acting in a managerial capacity at the time of the accident," and his many responsibilities at the landfill. But an employee's title is not dispositive; thus, the mere fact that White held the title of manager does not mean that he was employed in a managerial capacity as defined in the charge. *See Hammerly Oaks, Inc.*, 958 S.W.2d at 391. Further, because in this context the phrase "managerial capacity" has a specialized, legal meaning—the one set forth in the charge—and because White was not presented with the legal definition of this phrase when he was asked at trial whether he had acted in a managerial capacity, his testimony constitutes no evidence that he qualified as a manager under the charge's definition. *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 410 n.23 (Tex. 2016) (holding that expert's testimony constituted no evidence because it was not premised on the correct legal definition). Finally, White's responsibilities at the landfill are not dispositive regarding his status as a manager unless they fall within the parameters of the charge's definition. *See Hammerly Oaks, Inc.*, 958 S.W.2d at 391. And because White was not the highest ranking person at the landfill and could not hire or fire employees, his responsibilities do not show that he was a manager under that definition. *See id.*; *see also GTE Sw., Inc.*, 998 S.W.2d at 618.

Maria alternatively argues that even if White was not employed in a managerial capacity, the record nevertheless contains legally sufficient evidence to support the

15

jury's finding that Waste Management was grossly negligent.[10] She grounds this argument on Smith's admitted failure to implement a traffic-control plan for the DFW Landfill even though Waste Management's safety policies required one.[11] Corporate safety policies—or the lack thereof—can serve as the basis for a gross-negligence finding, but under the circumstances of this case, the lack of a traffic-control plan does not support an inference that Smith was subjectively aware of or consciously indifferent to the risk of injury that Dodd faced by directing traffic in the middle of the road near the working face. *See La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 247–48 (Tex. 1999). While Waste Management's safety policy requiring a traffic-control plan shows its general recognition of the danger of being run over at a busy landfill, Smith's failure to implement such a traffic-control plan does not support an inference that he had any actual knowledge that Dodd was directing traffic in the landfill road—much less that he placed him there with conscious indifference to the

---

[10]We note that this argument runs counter to Maria's counsel's statement to the jurors during closing argument that before they could find that Dodd's death resulted from Waste Management's gross negligence, they had "to find first that . . . White [was] a manager or employed in a managerial capacity at the time."

[11]Maria vaguely asserts that the conduct of Waste Management's "[o]ther [m]anagers" supports the jury's gross-negligence finding. In addition to Smith, Maria mentions Chuck Haraf, Waste Management's Director of Safety for the Texas-and-Oklahoma region, in the section of her brief setting forth her alternative argument. But, as noted, her alternative argument is grounded on Waste Management's failure to implement a traffic-control plan for the DFW Landfill. And it was Smith—not Haraf—who was responsible for instituting such a plan at that particular site. Thus, we will treat Smith as the relevant actor for purposes of analyzing Maria's alternative argument.

known risk. Rather, the record reflects that Smith (1) was not involved in the decision to have Dodd direct traffic, (2) did not see Dodd after 7:30 a.m. on the day of the accident (and thus did not even know that he was directing traffic that day), and (3) was not near the scene of the accident when it occurred. Indeed, when Maria's counsel asked Smith whether it was true that Dodd "was right where he was supposed to be directing traffic" at the time of the accident "because that[] [was] where . . . White put him," Smith replied that he "d[id] not know that" and that Maria's counsel "would have to ask . . . White." Thus, we reject Maria's argument that the record contains legally sufficient evidence of Waste Management's gross negligence "with or without . . . White's acts and omissions."

Having determined that the record lacks evidence to show that White was employed in a "managerial capacity" as defined in the charge and having rejected Maria's alternative argument that Smith's failure to implement a traffic-control plan supports the jury's gross-negligence finding, we conclude that the evidence is legally insufficient to support Maria's gross-negligence claim. Accordingly, we sustain Waste Management's sole issue.

### III. CONCLUSION

Having sustained Waste Management's sole issue, we reverse the trial court's judgment and render judgment that Maria take nothing on her gross-negligence claim.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 23, 2025