**Opinion issued March 5, 2019**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-18-00885-CV

———————————

## IN THE INTEREST OF C. M. J. AKA C.W., Child

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-03689J**

---

## O P I N I O N

This is an appeal from a decree terminating a mother's parental rights and appointing the Department of Family and Protective Services as sole managing conservator of her child. The mother contends in her first issue that the trial court improperly denied her motion to dismiss because the statutory deadline by which the case was to be finalized had passed. She contends second that the trial court

erroneously granted the Department's summary-judgment motion. Because the trial court properly extended the finalization deadline and because there existed no genuine issue of material fact as to whether a factfinder could form a firm belief or conviction on the statutory-predicate ground, we overrule the mother's first issue and overrule her second issue in part. Because the mother's summary-judgment evidence required the trial court to weigh the parties' competing evidence on the child's best interest, we sustain in part the mother's second issue.

## Background

This parental-termination case concerns J.L.C.'s fifth child, C.M.J. Between 2003 and the start of this case, J.L.C. had five children. Her parental rights over four of those children were terminated after a long history of drug use, violence, and child endangerment.

We begin in September of 2003, the month after the mother's first child was born. The mother was admitted to the hospital and tested positive for cocaine. Although she denied using cocaine, she explained that "she cooked cocaine for her brother as he did not know how to cook cocaine and the cocaine may have been absorbed through her skin." The Department tried to provide the mother with a family-services plan to ensure that she could provide her newborn son with a safe environment, but the Department was unable to do so after it lost contact with her and could not find her.

2

Then, in 2004, the mother was convicted of evading arrest and sentenced to six months' confinement for violating the conditions of the community supervision she was on for evading arrest about a year earlier. Around eight months after the birth of her second child, in 2006, the Department received a second report that the mother was using crack cocaine after being released from jail. The father of the two children refused to speak with the Department's caseworker and "was very threatening and hostile." The mother again denied using drugs. Next, while her second child was less than a month old, the mother was convicted of theft and sentenced to eleven months in jail.

Shortly after getting out of jail, the Department received another report alleging that the mother's one-year-old child was "always dirty"; that she left the child "to be cared for by different people"; and that she allowed the child to be "around people that were using crack and blowing smoke into [the child's] face." The Department interviewed the mother, and while she again denied using drugs, she said that she was living in a shelter and was stealing to provide for her family. The Department again attempted to provide the mother with services, but, again, it lost contact with her. Three months later, the mother was sentenced to thirty days' confinement for another theft conviction. Shortly after she was released, the mother had her third child.

In June of 2009, the Department requested that the mother's three children be placed in its conservatorship after receiving another complaint that the mother left two of her three children with a babysitter and failed to return for almost two weeks. The Department could not find the mother during its investigation, but it did discover that one of her children had been living with a relative for the past two years. The relative did not know where the mother was, which was especially problematic because the mother had the information regarding the child's access to Medicaid. The relative informed the Department that the children's father was "always loaded on drugs," and that, last known, the mother "was living in a crack house." During the pendency of that suit, the mother failed three drugs tests and refused to take two others.

The trial court signed a decree terminating the mother's parental rights to her three children. In that order, the trial court found that the mother engaged in conduct endangering to her children and knowingly allowed her children to remain in endangering circumstances, in violation of Texas Family Code subsections 161.001(b)(1)(D) and (E). It also found that the father violated subsection (E) and that termination of both parents' parental rights was in the children's best interest. The three children were placed in the Department's sole managing conservatorship.

Nine months later, in November of 2011, the mother had a fourth child. Not a year later, the Department received a report alleging that the mother and father were

subjecting the child to physical abuse. The allegations described a witnessed argument between the mother and father that culminated with the father throwing the child "on the concrete." The following day, a Department caseworker visited the home and observed "what appeared to be droplets of blood everywhere," and the caseworker called the police. The mother told the police and caseworker that she no longer needed help and that she did not want to let the worker or the police into the home because "the father" was "kind of crazy." When the caseworker told the mother that the Department wished to have the child placed with a relative because of concerns related to the domestic violence, the mother locked the door and refused to cooperate. The Department convinced the mother to give the baby to a relative and then filed suit, requesting that the child be placed in its temporary conservatorship due to concerns that the mother and father posed a danger to the child.

During the suit, the mother continued to test positive for cocaine and failed to comply with court-ordered drug testing. The trial court signed a decree terminating the mother's parental rights to her fourth child on February 21, 2013. The trial court supported its decree with findings that the mother's parental rights were previously terminated as to her other three children because she engaged in conduct that endangered their well-being; that she failed to comply with court-ordered tasks and

5

services necessary for reunification with her child; and that termination of her parental rights was in the child's best interest.

Nine months later, the mother had C.M.J., the child involved in this suit. When the child was still a year old, the child's father—who was not the same father of the other four children—was convicted of assaulting the mother. In February of 2016, the Department received a report that C.M.J. was subject to neglectful supervision and that the mother was abusing prescription drugs. The report described the mother as sleepy, drunk, and stumbling. The report also alleged that the mother would drive with C.M.J. in the car while she was intoxicated. The Department attempted to meet with the mother, but she refused. The mother also would not provide information about the child's father, nor would she disclose her address. A Department caseworker tried unsuccessfully nine other times to contact the mother.

The Department filed, and the trial court granted, an emergency petition naming the Department as temporary managing conservatorship over C.M.J., pending the outcome of an adversarial hearing. After the adversarial hearing, the trial court found that despite reasonable efforts made to prevent the child's removal, there remained a danger to the child's safety that warranted his immediate removal from his parents' care and placement in the Department's temporary managing conservatorship.

On August 30, 2016, the trial court held a status hearing to discuss the Department's family-service plans developed for the mother and father. The trial court found the existence of aggravated circumstances under Texas Family Code section 262.2015, which relieved the Department of its obligations to provide the mother with a family-services plan or make reasonable efforts to return the child to her care.

About nine months later, the trial court issued an order retaining the suit on its docket and setting hearing dates. This order added 180 days to the usual deadline that requires parental-termination cases to be finalized by "the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator." *See* TEX. FAM. CODE § 263.401(b). With this order in place, the new deadline became January 19, 2018.

On September 5, 2017, about six months before the January deadline, and shortly after Hurricane Harvey struck Texas, the Texas Supreme Court entered an Emergency Order Affecting Child Protection Cases that permitted trial courts to suspend the effects of the deadline statute if "the court finds that disastrous conditions . . . precluded compliance" and that provided "any such suspension extends to the date the court finds it reasonably possible to proceed, taking into account the circumstances." Twenty-one days after the Texas Supreme Court issued its order, the trial court signed an order retaining the suit on the court's docket. The

7

trial court found that Harris County was experiencing a state of disaster and that the court was "incapable of commencing trial by the scheduled dismissal deadline." The order then listed the new dismissal deadline as October 6, 2018. Months before that deadline, on March 3, 2018, the mother filed a motion to dismiss, arguing that the case should automatically be dismissed because the deadline imposed by section 263.401 had passed. The trial court denied the mother's motion.

The Department later filed a motion for summary judgment, maintaining that termination of the parents' parental rights was warranted as a matter of law. Specifically, the Department argued that its summary-judgment evidence conclusively established that termination of the mother's parental rights was supported by Texas Family Code 161.001(b)(1)(M) and that termination of her rights was in C.M.J.'s best interest. The Department's evidence detailed the accounts described above. That evidence included the referral affidavits from this case and the two previous cases, police reports, the mother's drug-test results, the criminal records of the mother and the father, several affidavits by Department caseworkers who were involved with the case, and certified copies of the termination decrees of the mother's other four children.

The trial granted the Department's motion, terminating the mother's parental rights under section 161.001(b)(1)(M), finding "by clear and convincing evidence that termination of the parent-child relationship between the mother and C.M.J . . .

is in the child's best interest," and naming the Department as sole managing conservator.

## Analysis

The mother raises two issues on appeal. She contends that the trial court erroneously denied her motion to dismiss. She also contends that the trial court improperly granted the Department's summary-judgment motion.

## I.    Motion to dismiss

The mother first contends that the trial court was required to grant her motion to dismiss under Family Code section 263.401(a). This section was recently amended in 2017. That amendment states that the changes made to section 263.401 "apply only to a suit affecting the parent-child relationship filed on or after [September 1, 2017]." Act of May 28, 2017, 85th Leg., R.S., ch. 319, §§ 33–34, 2017 Tex. Gen. Laws 716, 738 (codified at TEX. FAM. CODE § 263.401(a)). Because this suit began before the present amendment, the former provision controls here. That provision read:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

9

The trial court rendered a temporary order appointing the Department as temporary managing conservator on July 19, 2016, which would make July 24, 2017, the first Monday after the first anniversary of that order. On May 17, 2017, and before the dismissal deadline, the trial court signed an order under section 263.401(a) retaining the suit on the court's docket. This order extended the dismissal deadline to January 6, 2018.

The mother contends that because she brought a motion to dismiss three months after that deadline, the trial court was required to dismiss the suit. But the mother ignores the Texas Supreme Court's Emergency Order Affecting Child Protection Cases in response to Hurricane Harvey. This order, entered under Government Code section 22.0035, permitted trial courts to suspend the effects of 263.401 if "the court finds that disastrous conditions resulting from Hurricane Harvey precluded compliance" and provided that "any such suspension extends to the date the court finds it reasonably possible to proceed, taking into account the circumstances." On September 26, 2017, the trial court, under the Texas Supreme Court's order, signed an order retaining the suit on the court's docket. The trial court found that Harris County was experiencing a state of disaster and that the court was "incapable of commencing trial by the scheduled dismissal deadline." It then noted the new dismissal deadline as October 6, 2018. The mother filed her motion to

dismiss about eight months before that deadline. Accordingly, the trial court was not required to dismiss this suit, and we overrule the mother's first issue.

## II.    Summary judgment

The mother maintains the Department's summary-judgment evidence is insufficient to support parental termination as a matter of law. We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Before a trial court may terminate parental rights, the Department must prove by clear and convincing evidence that both a predicate statutory ground under section 161.001(b)(1) exists and that terminating parental rights is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1); *In re B.L.D.*, 113 S.W.3d 340, 353–54 (Tex. 2003). Normally, the Department satisfies its burden through a trial. But here, the Department chose to proceed through summary judgment under Rule of Civil Procedure 166a.[1]

---

[1]    In her brief, the mother fairly questions whether the Texas Constitution permits the termination of parental rights by summary judgment. *See, e.g.*, *In re G.M.G.*, 44 S.W.3d 46, 61–62 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (Christopher, J., concurring) (questioning constitutionality of termination by summary judgment). Nevertheless, the mother's constitutionality argument is not preserved for appellate review because she failed to raise the issue in the trial court. *See* TEX. R. APP. 33.1 (requiring preservation of issues); *see also In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (stating that constitutional complaints in parental-termination cases must be raised in trial court to be preserved for appellate review).

In the typical summary-judgment case, the movant must establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166(a); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). If the movant satisfies this standard, the burden shifts to the nonmovant to raise a genuine issue of material fact that will preclude summary judgment. *Willrich*, 28 S.W.3d at 23. Unlike most civil cases, which are governed by a preponderance-of-the-evidence standard, parental-termination cases employ the "clear and convincing" standard. *See* TEX. FAM. CODE § 161.001(b). Accordingly, we must first determine whether this clear-and-convincing evidentiary standard alters the typical summary-judgment standard. The supreme court's decision in *Huckabee v. Time Warner Entertainment Co.*, 19 S.W.3d 413 (2000) is particularly instructive.

In *Huckabee*, the issue was whether the court of appeals properly reversed a trial court's order denying summary judgment in favor of a broadcaster being sued for defamation by a public figure. *Id.* at 416–17. In defending the court of appeals' reversal, the broadcaster argued that, because defamation requires a plaintiff to "establish actual malice by clear and convincing evidence," the appropriate summary-judgment standard should be the federal standard: whether "the evidence in the record could support a reasonable jury finding that the plaintiff has shown

12

actual malice by clear and convincing evidence." *Id.* at 420 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–56 (1986)).

In rejecting the broadcaster's argument, the Supreme Court cited *Casso v. Brand*, 776 S.W.2d 551, 555–57 (Tex. 1989), its decision holding that neither the United States Constitution nor the Texas Constitution required a special summary-judgment procedure in public-figure defamation cases. *Huckabee*, 19 S.W.3d at 421. Although alterations made to the Rules of Civil Procedure after *Casso* "obviated, to some extent, the differences in summary judgment procedure between [the Federal and Texas] systems," the Supreme Court concluded that *Casso* was premised on two "practical considerations, which remain valid today." *Id.*

The first consideration was the "difficulty in adapting review under a heightened evidentiary standard to Texas summary judgment practice." *Id.* "Requiring the trial court to determine at the summary judgment stage whether a reasonable juror could find the evidence to be clear and convincing suggests that the trial court must weigh the evidence," which stood in sharp contrast to extant Texas law that prohibits the weighing of evidence at the summary-judgment stage. *Id.* at 421–22. The second consideration was that the vague "clear-and-convincing standard provides little guidance regarding what evidence is sufficient for a plaintiff to avoid summary judgment." *Id.* at 422. Accordingly, the court concluded, absent "authority that would constitutionally require it, we decline to adopt the clear-and-

13

convincing standard at the summary judgment stage of a public-figure defamation case." *Id.* at 423.

In contrast, it is well established that a parent's natural right to the custody of her children is of significant constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). The right is "far more precious than any property right." *Santosky*, 455 U.S. at 758–59. Unsurprisingly, parental-termination cases have been described as "the 'death penalty' cases of civil law." *In re K.G.M.*, 171 S.W.3d 502, 506 (Tex. App.—Waco 2005, no pet.) (Vance, J., concurring). "Termination is a drastic remedy and is of such weight and gravity that due process requires the state to justify termination of the parent-child relationship by proof more substantial than a preponderance of the evidence." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). And termination proceedings are "strictly scrutinized." *Holick*, 685 S.W.2d at 20.

The constitutional authority for incorporating the clear-and-convincing standard into the summary-judgment standard that was lacking in the public-figure-defamation context exists here. "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs." *Santosky*, 455 U.S. at 753. In light of these constitutional considerations, we conclude that, in the context

14

of a parental-termination case, the clear-and-convincing standard applies at the summary-judgment stage.[2]

As the *Huckabee* court described, the clear-and-convincing summary-judgment standard is difficult to satisfy.

> On a cold summary judgment record, without having observed a single witness, it would take keen insight to forecast accurately whether probative evidence would or would not produce a "firm belief or conviction" in the mind of the trier of fact. The distinction, in a paper record, between evidence that will merely raise a fact issue and evidence that will be clear and convincing is generally subtle, if not wholly subjective.

*Huckabee*, 19 S.W.3d at 422–23. Hence, the court noted, "We believe it obvious that this determination may be more easily and accurately made after a trial on the merits." *Id.* at 423.

We now apply this clear-and-convincing standard to the summary-judgment evidence in this case, beginning first with the predicate-statutory ground. The

---

[2]   A Colorado Court of Appeals has taken a nearly identical approach. *See People in Interest of A.E.*, 914 P.2d 534 (Colo. App. 1996). In *A.E.*, the court acknowledged that the Colorado Supreme Court had "ruled that because the applicable standard of proof in a summary judgment motion is whether there is a genuine issue of material fact, neither the 'clear and convincing' nor the 'preponderance of the evidence' standard is applicable." *Id.* at 538 (quoting *Neves v. Potter*, 769 P.2d 1047 (Colo. 1989). Nevertheless, the court reasoned, because "termination of the parent-child legal relationship is a drastic remedy that affects a parent's liberty interest, a court deciding a summary judgment motion seeking to terminate parental rights must apply the standard of clear and convincing evidence to the applicable statutory criteria." *Id.*

Department moved for summary judgment on the predicate-statutory ground under section 161.001(b)(1)(M). That provision states that the Department satisfies its burden of establishing a predicate ground with evidence that the parent had her "parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." Evidence of a prior decree reflecting the requisite findings under subsection (D) or (E) satisfies the Department's burden under subsection (M). *See In re A.C.*, 394 S.W.3d 633, 641 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Here, the Department's summary-judgment evidence included trial-court decrees terminating the mother's parental rights over her other four children. The first decree was signed on February 1, 2011, and contained findings that the mother violated both subsections (D) and (E). The second decree was signed on February 21, 2013, and contained findings that the mother violated subsections (O) and (M).

Although *Huckabee* suggested that, under the clear-and-convincing summary-judgment standard, summary disposition may never be appropriate because it is likely impossible for a trial judge to apply the standard without being forced to weigh the evidence, *see Huckabee*, 19 S.W.3d at 422–23, we believe that a case such as this, where the Department moves for summary judgment on the predicate-statutory ground under section 161.001(b)(1)(M), presents a scenario where a trial court can grant summary judgment without having to weigh the evidence. Subsection (M)

16

requires only that the Department establish that the mother had her parental rights as to other children terminated for her violation of subsections (D) or (E). Absent evidence that the decrees were suspended or reversed, we cannot see how the mother could produce any evidence that would create a fact issue on the decrees that contain findings that she violated subsections (D) and (E). Under this circumstance, summary judgment on whether the parent violated section 161.001(b)(1)(M) is appropriate because decrees showing that the parent violated subsections (D) or (E) satisfy the Department's burden under subsection (M) as a matter of law, with no evidence weighing required. *See In re A.C.*, 394 S.W.3d at 640–41. Summary judgment on a child's best interest, however, presents different concerns.

Unlike the wholly objective inquiry that subsection (M) calls for, a child's best-interest determination under subsection 161.001(b)(2) calls for a delicate weighing and balancing of numerous factors that are unique to each child and parent.[3] Accordingly, when the mother submitted summary-judgment evidence of

---

[3] *See In re K.M.L.*, 443 S.W.3d 101, 117 (Tex. 2014) (describing certain *Holley* factors as "weigh[ing] in favor of the foster care placement and in favor of termination"); *In re E.N.C.*, 384 S.W.3d 796, 808 (Tex. 2012) (same); *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) ("Suits affecting the parent-child relationship are intensely fact driven, which is why courts have developed best-interests tests that consider and balance numerous factors."); *Green v. Remling*, 608 S.W.2d 905, 908 (Tex. 1980) ("The trial judge is better situated to weigh all of the surrounding circumstances and arrive at a judgment which in his discretion will best protect the best interest of the child."); *Taylor v. Meek*, 276 S.W.2d 787, 790 (Tex. 1955) (noting that "presumption that to be

her paying money to C.M.J.'s caregiver, the trial court could not rule on the Department's summary-judgment motion on best interest without weighing the parties' competing summary-judgment evidence. *See supra* note 3; *Huckabee*, 19 S.W.3d at 422–23 ("Texas law has always emphasized that trial courts must not weigh the evidence at the summary judgment stage."). Thus, the trial court improperly granted the Department's summary-judgment on C.M.J.'s best interest.

Our holding should not be read as a categorical prohibition against summary judgment on best interest in parental-termination cases. There may be circumstances where it is appropriate. *See, e.g.*, *Dowell v. Dowell*, 276 S.W.3d 17, 22 (Tex. App.—El Paso 2008, no pet.) ("There may be instances where the acts or omissions of the parent, standing alone, are sufficient to establish as a matter of law that termination is in the best interest of the children."); *In re T.H.*, No. 05-99-01142-CV, 2000 WL 1853042, at *2 (Tex. App.—Dallas 2000, no pet.) (rejecting argument that summary judgment is never appropriate for parental-termination cases). *But see In re E.N.C.*, 384 S.W.3d at 808 ("A lack of evidence does not constitute clear and convincing evidence.") (Christopher, J., concurring). But summary judgment on a child's best interest will rarely be appropriate.[4] We overrule in part and sustain in part the

---

raised by [a child's] natural parents is to the child's best interest . . . should be considered by the trial judge in weighing the evidence").

[4] We also note that the trial court granted the Department's summary-judgment motion at the pretrial conference three days before this case was set for trial, where the mother appeared and asked for a continuance, explaining "I've just

mother's second issue. The trial court must commence a new trial no later than 180 days after the issuance of our mandate in this case. *See* TEX. R. APP. P. 28.4(c).

## Conclusion

We affirm the trial court's denial of the mother's motion to dismiss and its ruling on the Department's summary-judgment motion on the predicate-statutory finding under Family Code subsection 161.001(b)(1)(M). We reverse and remand on the trial court's granting of the Department's summary-judgment motion on C.M.J.'s best interest.


Richard Hightower
Justice

Panel consists of Justices Lloyd, Kelly, and Hightower.

Publish.

---

met [my attorney] today . . . . [W]hy can't I get the same opportunity as CPS. They filed three continuances . . . . All I'm asking is give me some time so we could talk . . . . [W]e haven't even prepared for the [summary-judgment] response . . . ."

19