# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00454-CV

---

**D. J. and A. S., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 312,083-B, THE HONORABLE ALAN MAYFIELD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A.S. (Mother) and D.J. (Grandmother) appeal the trial court's Decree of Termination, which terminated Mother's parental rights to A.S. (Child) and appointed the Department of Family and Protective Services (the Department) as Child's managing conservator.

In three issues, Mother contends that (1) the evidence was legally and factually insufficient to support termination under Family Code section 161.001(b)(1)(M), the only statutory predicate found by the trial court, because the prior termination decree relied on was at the time of trial in this suit still on appeal and thus not yet final; (2) the trial court abused its discretion by not timely appointing counsel for Mother; and (3) the evidence was legally and factually insufficient to support termination under Family Code section 161.001(b)(2)'s best-interest requirement.

In two issues of her own, Grandmother contends that (1) the trial court should have extended the trial date under Family Code section 263.401(b) and (2) the evidence was legally and

factually insufficient to support the best-interest finding that supported appointing the Department, and not Grandmother, as Child's managing conservator.

We affirm.

## BACKGROUND

Mother was incarcerated from February 2019 until June 2020, after her felony probation was revoked for continuing "to engage in criminal activity." Mother's past criminal offenses included: two convictions for assault causing bodily injury to a family member, one for tampering with evidence, and one for resisting arrest.

In June 2019, in a separate suit, the trial court entered a termination decree that terminated Mother's parental rights to her two older children. The trial court in this prior decree found by clear and convincing evidence that Mother had violated Family Code section 161.001(b)(1)(E) and other subsections of Section 161.001(b)(1) and that terminating her parental rights was in the children's best interest.[1] The two older children as of the July 2020 trial in this suit were already "in the adoption unit" to "be adopted by the[ir] foster parents."

On August 8, 2019, Child was born to Mother in prison. He was born prematurely, under 37 weeks; was diagnosed with pulmonary hypertension; and stayed in the hospital for three weeks to receive oxygen. The Department filed this suit in September 2019, seeking termination of Mother's parental rights to Child. Mother's mother (Grandmother) intervened in the suit, seeking to be appointed managing conservator.

---

[1] That termination decree was affirmed by this Court in November 2019, the Supreme Court of Texas denied the related petitions for review in May 2020, and our mandate issued in October 2020 after the Supreme Court denied a motion for rehearing. *See D.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00448-CV, 2019 WL 5793118 (Tex. App.—Austin Nov. 7, 2019, pet. denied) (mem. op.).

Between Child's birth and the trial of this suit, Grandmother visited Child every weekend that she could, making a six-hour drive to do so. Before the public efforts to contain the COVID-19 pandemic began, she visited him "every week," "[t]wo hours a week." The pandemic containment efforts then caused that to "stop[] for a couple of months." The visits then restarted in June 2020. After Grandmother's visits, Child was increasingly laughing, smiling, kissing, hugging, and being "more open" with her.

A week before the July 2020 trial of this suit, Grandmother moved for an extension under Family Code section 263.401(b), alleging "extraordinary circumstances" and that the extension was in Child's best interest. In her extension motion, she argued that she had "been having unsupervised visits with [Child] during the weekends," that she had "successfully taken care of [Child] while in her care," but that she needed the extension "to provide a period of monitored return . . . as described by the [Department] in the last Permanency Hearing." Grandmother's motion was not accompanied by any evidence.

Mother was released from prison the month before trial. Despite being in contact with the Department, Mother had not answered the suit; had not appeared for any of the preceding hearings conducted, including by video conference from prison; did not appear at trial; and had not provided the Department with proof of employment or a list of her medications as the Department had requested of her. The Department offered as evidence a certified copy of the prior termination decree related to Mother's two older children, and the decree was admitted.

A bench trial began on July 13, 2020, at which time Child, who was nearly 11 months old, had been living with a "primary medical needs" foster family since his discharge from the prison hospital in September 2019. He has ongoing medical needs, including oxygen treatments day and night, which require checking him frequently throughout the day for any

3

trouble breathing. The Department's caseworker testified that the foster parents understand Child's medical needs and are trained to be "able to care long term" for those needs. The caseworker also testified that the foster parents are providing for all of Child's emotional and physical needs; that their home is "a safe, stable home" for Child; and that they are willing to adopt him. Other Department personnel believe Child is bonded with the foster parents—so bonded that Child "screamed hysterically when taken from [foster mother's] arms." The Department also offered evidence that the foster parents wanted to adopt Child.

Grandmother testified about her view of Mother as a parent. She testified that she talks to Mother from time to time and she knows that Mother has used illegal drugs, including either methamphetamine or amphetamine. Grandmother does not allow Mother to see Child, which is why she asked Mother to move to the Houston area after her release from prison. Grandmother noted Mother's "psychological problems," including a diagnosis as "schizo, you know, bipolar." Grandmother testified that Mother's "mental health issues cause her to be a danger to" Child and, indeed, to "anybody" else. Grandmother believes Mother to be "a bad mother" and a danger to Child. She further testified that any child around Mother would be in danger of serious bodily injury if Mother is not on her medications.

Grandmother also testified about her own suitability as a placement for Child. She testified about her frequent visits with Child and that she has an adoption license, which required her to complete emergency-medical training; wants to adopt Child; earned two approved home studies from non-Department reviewers, the latter in June 2020; has the financial ability to care for Child; has a room for Child in her home; is willing to complete further training or services as needed to better care for Child; and sees Child growing in his bonding with her during her visits. The Department disagreed, offering evidence of Grandmother's criminal history and her suitability

4

as Child's caretaker. The Department offered evidence that she was once on felony probation for forging a prescription, as well as once on misdemeanor probation for Driving While Intoxicated, and was arrested for assault bodily injury of a family member. It also offered evidence that Child smelled of cigarette smoke when returned from her home; that there were two failed Department home studies of her home, one in December 2019 and another during the suit related to Mother's two older children; and that Department personnel had safety concerns about her conduct and comments tending to minimize Mother's "mental health issues."

Relatedly, in the Department's removal affidavit, its affiant swore that one of Mother's older two children "has stated several times that [Grandmother] beat him." Child's guardian *ad litem* also, in unsworn comments to the trial court during the trial, generally agreed with the Department's positions and underlying reasons. The guardian *ad litem* added that the older two children, in the prior termination suit, "acknowledged that [Grandmother], basically, physically abused them with, I think it was, a spoon and/or belt." The guardian *ad litem* therefore could not "be onboard with placing a child in a home where there have been children who have made outcries to that." Grandmother denied the abuse allegations during her trial testimony.

Relying on the prior termination, the trial court entered its Decree of Termination, in which it found by clear and convincing evidence that Mother "had her parent–child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of" Family Code section 161.001(b)(1)(E) and that terminating her parental rights to Child was in Child's best interest. *See* Tex. Fam. Code § 161.001(b)(1)(M), (b)(2). Mother and Grandmother appealed.

We abated the appeal and remanded to the trial court to determine whether Mother or Grandmother were indigent and whether either was entitled to an appointed appellate attorney.

5

*D.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00454-CV, 2020 WL 6122059, at *1 (Tex. App.—Austin Oct. 12, 2020, order) (per curiam). The trial court held a hearing on October 23, 2020, at which Mother appeared for the first time in this suit and testified along with Grandmother. Mother admitted under oath that she never answered the suit or appeared in court until this hearing, even though she could have appeared by video conference while she was incarcerated. She also admitted under oath that she never requested an attorney in this suit. The trial court then heard Mother's testimony about her finances and helped her fill out the required indigency form. The court determined that Mother was indigent and appointed an attorney to represent her on appeal.

Grandmother also testified about her finances and, likening Child's situation to the older two children's, stated: "You know, I have two other little boys in foster care also, and they're going to appeal also. See, that's two separate cases." The trial court then found Grandmother not to be indigent. We turn now to Mother's and Grandmother's appellate issues.

## MOTHER'S THREE ISSUES

### I. Applicable law and standard of review

"While parental rights are of constitutional magnitude, they are not absolute." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). To terminate the parent–child relationship, the party seeking termination must prove by clear and convincing evidence that (1) the parent has engaged in conduct set out by statute as a predicate for termination and (2) termination is in the child's best interest. Tex. Fam. Code § 161.001(b)(1), (2); *see C.H.*, 89 S.W.3d at 23. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code

6

§ 101.007. "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018).

To review the sufficiency of the evidence in parental-rights-termination cases, we apply a standard of review that reflects this heightened standard of proof, *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002), focusing on whether the evidence is such that a reasonable factfinder could form a firm belief or conviction, *C.H.*, 89 S.W.3d at 26 ("A standard [of review] that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role."). In this context, "[t]he distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *A.C.*, 560 S.W.3d at 630. In conducting a legal-sufficiency review, a reviewing court "cannot ignore undisputed evidence contrary to the finding" but must otherwise look at the evidence in the light most favorable to the judgment, which means the court must "assume the factfinder resolved disputed facts in favor of the finding." *Id.* at 630–31; *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *J.F.C.*, 96 S.W.3d at 266. Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the finding and considering undisputed contrary evidence, a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *A.C.*, 560 S.W.3d at 631; *J.F.C.*, 96 S.W.3d at 266.

A factual-sufficiency review, by contrast, requires "weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *A.C.*, 560 S.W.3d at 631. "In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "Evidence

7

is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

The trial court may order termination of the parent–child relationship under Section 161.001(b)(1)(M) if clear and convincing evidence establishes that the parent has "had his or her parent–child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." The other predicate finding that Subsection (M) refers to and that is relevant here concerns a parent's having "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E).

In addition to one of the predicate findings required by Section 161.001(b)(1), the trial court may order termination only if clear and convincing evidence establishes that termination is in the child's best interest. Tex. Fam. Code § 161.001(b)(2). The best-interest determination is "child-centered and focuses on the child's well-being, safety, and development." *A.C.*, 560 S.W.3d at 631. A strong presumption exists that a child's best interests are served by maintaining the parent–child relationship. *D.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00323-CV, 2020 WL 7395924, at *5 (Tex. App.—Austin Dec. 17, 2020, pet. denied) (mem. op.); *In re A.M.*, 495 S.W.3d 573, 580 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). To determine whether termination is in a child's best interest, we consider the non-exhaustive factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976): (1) the child's wishes; (2) the child's present and future emotional and physical needs; (3) any emotional and physical danger to the child, now and in the future; (4) the parenting abilities of the person seeking custody; (5) the programs available

8

to assist these individuals in promoting the best interest of the child; (6) the plans for the child by the individual or agency seeking custody; (7) the stability of the proposed home or proposed placement; (8) the parent's acts or omissions that may indicate that the existing parent–child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. The Department need not prove all of these factors, and the lack of evidence under some of these factors does not preclude a finding that termination is in the child's best interest, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. "The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs." *M.R. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00715-CV, 2018 WL 1023899, at *3 (Tex. App.—Austin Feb. 23, 2018, no pet.) (mem. op.).

The trial court is the factfinder in a bench trial and, as such, is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011). In an appeal after a bench trial, we assume that the trial court resolved disputed facts in favor of its decision if a reasonable factfinder could have done so. *J.F.C.*, 96 S.W.3d at 266; *J.B. v. Texas Dep't of Fam. & Protective Servs.*, Nos. 03-11-00196-CV, 03-11-00303-CV, 2012 WL 593484, at *4 (Tex. App.—Austin Feb. 24, 2012, no pet.) (mem. op.). We may not substitute our judgment for the trial court's and must give deference to the trial court's findings, its determinations of witness credibility, and its resolution of evidentiary conflicts. *See A.J.R. v. Texas Dep't of Fam. & Protective Servs.*, Nos. 03-19-00661-CV, 03-19-00662-CV, 2020 WL 1174189, at *7 (Tex. App.—Austin Mar. 12, 2020, no pet.) (mem. op.); *Mason v. Texas Dep't of Fam. & Protective Servs.*, No. 03-11-00205-CV, 2012 WL 1810620, at *6 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.).

9

**II. The evidence was sufficient to support the Subsection (M) finding.**

In her first issue, Mother contends that the evidence was legally and factually insufficient to support termination under Section 161.001(b)(1)(M) because at the time of trial, the prior termination decree that the Department relied on was still on appeal and thus not yet final. Subsection (M) allows for termination of a parent's rights if she has had her "parent–child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state." Tex. Fam. Code § 161.001(b)(1)(M). Mother's arguments present a question of statutory interpretation: must the "terminat[ion]" or "finding" that Section 161.001(b)(1)(M) refers to no longer be subject to any pending appeal to constitute evidence under Subsection (M), citing as support *In re P.W.*, 579 S.W.3d 713 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

In *P.W.*, our sister court concluded that Subsection (M) entails a requirement that a termination order offered to support a Subsection (M) finding must be "final by appeal." 579 S.W.3d at 723. The court reasoned that Subsection (M) would suffer from "a serious doubt as to [its] constitutionality" if the Department could "prove a predicate act based on a termination finding . . . when a court has deleted the finding or reversed the final order *or when a court in a pending appeal might delete the finding or reverse the final order*." *Id.* (emphasis added).

At least one other court of appeals, however, has rejected a parent–appellant's argument that a decree offered to support a Subsection (M) finding could not "be used to prove a prior termination because the decree, and therefore the termination, was on appeal and thus not necessarily final." *In re A.C.*, 394 S.W.3d 633, 640 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The court rejected the argument, reasoning that Subsection (M)'s text does not expressly address exhaustion of all appeals, the parent had not superseded the subject decree while it was on

10

appeal, and the decree even while on appeal still had issue-preclusive effect. *Id.* at 640–41. The court therefore accepted the decree, even though it was on appeal, as legally sufficient evidence to support a Subsection (M) finding. *Id.*; *see also In re C.M.J.*, 573 S.W.3d 404, 412 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (affirming summary judgment for Department under Subsection (M) "because decrees showing that the parent violated subsections (D) or (E) satisfy the Department's burden under subsection (M) as a matter of law, with no evidence weighing required" (citing *A.C.*, 394 S.W.3d at 640–41)).

Here, no party has cited, and research has not revealed, any resolution of this split by the Supreme Court of Texas or any position taken by this Court on the issue. We need not address this split because even applying *P.W.*'s more restrictive standard, we still conclude that the evidence was legally and factually sufficient to support the Subsection (M) finding here. *See In re H.H.*, No. 06-20-00037-CV, __ S.W.3d __, 2020 WL 5735179, at *6 (Tex. App.—Texarkana Sept. 25, 2020, no pet.) (taking similar approach). The Department not only offered a certified copy of the prior termination decree, which included a finding under Subsection (E), but its caseworker also testified that the children who were the subject of the prior decree were already "in the adoption unit" to "be adopted by the[ir] foster parents." At trial, there was no controverting evidence under Subsection (M).[2] We therefore conclude that there was legally and factually sufficient evidence to support the finding required by Subsection (M). *See A.C.*, 560 S.W.3d at 631; *P.W.*, 579 S.W.3d at 723.

---

[2] The appellate procedural history of the prior termination suit is not part of the record in this suit. As of the date of trial in this suit, the prior decree had been upheld by this Court almost a year before this suit was tried, *see D.J.*, 2019 WL 5793118, at *4; the Supreme Court of Texas had denied review; and the only matter that was still pending before the Supreme Court was Mother's motion for rehearing, which the Court denied in September 2020.

11

For controverting evidence to support her sufficiency arguments, Mother relies on Grandmother's testimony from the October 23, 2020 hearing following our abatement to determine whether Mother was indigent and entitled to appointed appellate counsel. At the hearing, Grandmother testified that the older two children were, like Child, "going to appeal also." We may not consider this evidence in our sufficiency review because it was not before the trial court when it made its finding under Subsection (M). *See C.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00229-CV, 2017 WL 3471072, at *4 (Tex. App.—Austin Aug. 9, 2017, no pet.) (mem. op.) ("[O]ur review of the sufficiency of the evidence is limited only to the evidence adduced at trial and the properly noticed contents of the trial court's file.").

Mother also argues that upon the trial court's learning that the earlier termination decree was on appeal, the trial court should have *sua sponte* "immediately set[] aside the Decree of Termination upon verification of the appeal" and that the trial court's failure to do so violated her due-process rights and was an abuse of discretion. Mother's assertions fail because even assuming that the trial court should have verified the appeal, as Mother suggests, it would have discovered that all appeals of the prior termination decree were exhausted by October 23, 2020.[3] We therefore conclude that Mother's due-process and abuse-of-discretion assertions are not grounds for reversal. We overrule Mother's first issue.

---

[3] The appeals were exhausted when the Supreme Court denied rehearing of the petitions for review in September 2020 and we issued our mandate on October 21, 2020. Grandmother gave the testimony in question two days later. We take judicial notice of the relevant appellate procedural history for purposes of Mother's due-process and abuse-of-discretion assertions (but not for purposes of our earlier evidence-sufficiency review). *See generally* Tex. R. Evid. 201; *In re Valliance Bank*, 422 S.W.3d 729, 730 (Tex. App.—Fort Worth 2013, orig. proceeding [mand. denied]) (en banc) ("As an appellate court, we are entitled to take judicial notice of a proper fact even where a trial court was not requested to take judicial notice of the fact and the court made no announcement that it had taken such notice."); *McDaniel v. Hale*, 893 S.W.2d 652, 673 (Tex. App.—Amarillo 1994, writ denied) (same).

### III. Mother was appointed an attorney as soon as she was eligible.

In her second issue, Mother contends that the trial court abused its discretion by not timely appointing her counsel and that the trial court's failure to appoint her counsel violated her due-process rights. Mother relies on Family Code section 107.013(a)(1) for her right to counsel: "In a suit filed by a governmental entity under Subtitle E in which termination of the parent–child relationship . . . is requested, the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination."

However, a parent who was served with citation but who "did not file an answer, appear at any hearing, or in any way oppose the termination" is not entitled to an attorney under Section 107.013(a)(1). *See N.T. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-17-00573-CV, 2017 WL 5985507, at \*1, 5 (Tex. App.—Austin Nov. 29, 2017, no pet.) (mem. op.); *see also In re B.C.*, 592 S.W.3d 133, 136 (Tex. 2019) (per curiam) (parent must file affidavit of indigence before parent is entitled to attorney under Section 107.013). That is the situation here. Mother was served with citation on November 4, 2019. *See* Tex. Civ. Prac. & Rem. Code § 17.029; *N.T.*, 2017 WL 5985507, at \*4 ("[T]he officer's return is prima facie evidence of proper service."). She was released from confinement in June 2020, and trial took place on July 13, 2020. She never answered the suit, appeared at any hearing, or in any way opposed termination until her appeal. At the October 23, 2020 hearing, the trial court took her testimony about indigency to help fill out the required indigence form, ruled that she was indigent, and appointed an attorney to represent her on appeal. Thus, as soon as Mother appeared at a hearing and indicated her opposition to the suit, and after our remand to the trial court because the appeal was already pending, the trial court promptly appointed her an attorney. We overrule Mother's second issue.

13

**IV.    The evidence was sufficient to support the best-interest finding.**

In her third issue, Mother contends that the evidence was legally and factually insufficient to support the trial court's best-interest finding under Section 161.001(b)(2).  We review this issue under the nine *Holley* factors identified above.

Under the first, Child is too young to express his wishes.  This factor is thus neutral. Under the second and third, the trial court could determine that all the relevant evidence supported a conclusion that the foster parents could meet and were meeting Child's emotional and physical needs, that Mother could not, and that Mother was a source of danger to Child.  The Department's caseworker testified about Child's frequent need for oxygen and how the foster parents were trained to meet that need.  Her testimony that Child and the foster parents were bonded with each other also suggests that they were meeting his emotional needs.  There was no evidence that Mother could meet Child's physical or emotional needs.  In fact, Grandmother's testimony suggested the opposite, by describing her refusal to let Mother see Child and describing Mother as dangerous to Child.  The second and third factors thus point in favor of termination.

Under the fourth, sixth, seventh, and eighth, the trial court could have determined that these favored termination.  The caseworker's testimony supported a conclusion that the foster parents were able and stable parents, having been trained about Child's medical needs, developing an emotional bond with him, and willing to adopt him.  Theirs was a home, according to the caseworker's testimony, where Child could live permanently while being well taken care of.  On the other hand, no evidence tended to show Mother to be an able, stable, or even safe parent. Grandmother's testimony cast doubt on Mother's parental abilities, including by testifying that Mother's mental illness posed a danger to Child and to any other children.  Grandmother expected that Mother would likely cause serious bodily injury to a child if she was ever off her medications.

14

Mother's criminal history also suggested instability in housing and employment because she had recently been in prison and had only just begun living with her sister. Although she had been released from prison and was in contact with the Department, Mother did not answer the suit, request an appointed attorney, or appear at trial. The trial court heard from Grandmother's other testimony that even though Grandmother believes Mother's condition to be improving, she still refused to let Mother see Child and believed Mother to be a bad mother for Child. In all, the fourth, sixth, seventh, and eighth factors point in favor of termination.

Under the fifth, the testimony showed that the foster parents had training to better cope with Child's ongoing medical needs. On the other hand, there was no evidence of programs available to assist Mother in promoting Child's best interest. The fifth factor thus points in favor of termination.

Finally, under the ninth, there was no relevant evidence, so we consider this factor to be neutral.

In sum, the *Holley* factors point in favor of terminating Mother's parental rights to Child. We hold that the evidence was legally and factually sufficient to support the trial court's best-interest finding. *See A.C.*, 560 S.W.3d at 631; *C.H.*, 89 S.W.3d at 27. We overrule Mother's third issue.

## GRANDMOTHER'S TWO ISSUES

### I. There is no factual record of Child's needs upon which we can reverse the denial of Grandmother's motion for a Section 263.401(b) extension.

In her first issue, Grandmother contends that the trial court should have extended the trial date under Family Code section 263.401(b) due to "extraordinary circumstances" and in Child's best interest. In support, she offers her characterizations of the Department's positions at trial: that she "had not had an extensive amount of time to bond with [Child], that she did not have

15

any training regarding [Child]'s medical needs, . . . and that she appeared to need some additional training regarding caring for children who have experienced trauma." She argues that the Department did not raise these concerns with her over the months that she was attending visits with Child, instead saving them for trial. She goes on to argue that, as she testified, she is willing to complete additional training or services as needed to better care for Child. She explains that "due to COVID, there were some restrictions placed on the visits which caused her not to have as much access to visitations with [Child] so that a strong bond could be developed." She therefore needed a Section 263.401(b) extension because "with additional time and visits," she "could develop a very close bond with [Child]" to resolve "[a]ll of the issues that [the Department] listed as concerns." She concludes that the restrictions related to the COVID-19 pandemic therefore supplied "extraordinary circumstances" under Section 263.401(b) to extend the trial date so that, in effect, she could develop further evidence for why it was in Child's best interest that his relative—her—be appointed his managing conservator instead of the Department.

## A.    Applicable law and standard of review

Section 263.401(b) allows the trial court to extend the trial date in a parental-rights termination suit for "extraordinary circumstances" and only if it is in the child's best interest:

> Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).

See *M.G.P. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-13-00004-CV, 2013 WL 2157753, at \*2 (Tex. App.—Austin May 16, 2013, pet. denied) (mem. op.) ("The family code bars a trial

16

court from granting an extension of a final trial date unless there are 'extraordinary circumstances' that require it *and* the extension is in the child's best interest." (citing Tex. Fam. Code § 263.401(b))). A request for a Section 263.401(b) extension is similar to a request for a continuance. *M.U. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-13-00655-CV, 2014 WL 1018139, at *2 (Tex. App.—Austin Mar. 13, 2014, no pet.) (mem. op.).

We review a grant or denial of a Section 263.401(b) extension for an abuse of discretion. *Id.*; *Shaw v. Texas Dep't of Fam. & Protective Servs.*, No. 03-05-00682-CV, 2006 WL 2504460, at *8 (Tex. App.—Austin Aug. 31, 2006, pet. denied) (mem. op.). To determine whether a trial court abused its discretion, we decide whether the trial court acted without reference to any guiding rules or principles; in other words, we decide whether the act was arbitrary or unreasonable. *M.U.*, 2014 WL 1018139, at *2. There is no abuse of discretion when, without more, the trial court simply decided a matter within its discretion in a different manner than an appellate court would have decided it. *Id.*

As to the statute's use of "extraordinary circumstances," the trial court need not detail the particular circumstances that support its grant or denial of the extension. *Id.* at *3; *In re J.G.K.*, No. 02-10-00188-CV, 2011 WL 2518800, at *35 (Tex. App.—Fort Worth June 23, 2011, no pet.) (mem. op.). Indeed, Section 263.401(b) does not state any requirement that the trial court make its "extraordinary circumstances" and "best interest" findings on the record. *See J.G.K.*, 2011 WL 2518800, at *35. Therefore, once the trial court denies a Section 263.401(b) motion, the court's order or judgment includes any implied findings necessary to support the denial. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 53 (Tex. 2003) ("When neither party requests findings of fact and conclusions of law, it is implied that the trial court made all fact findings necessary to support its judgment."); *M.U.*, 2014 WL 1018139, at *3 n.17 (when there is no record

17

of hearing on motion for Section 263.401(b) extension, "we must presume that the evidence supported the trial court's ruling" (quoting *In re D.W.*, 249 S.W.3d 625, 647–48 (Tex. App.—Fort Worth 2008) (en banc), *pet. denied*, 260 S.W.3d 462 (Tex. 2008) (per curiam))); *accord In re Department of Fam. & Protective Servs.*, 273 S.W.3d 637, 655 & n.31 (Tex. 2009) (Hecht, J., dissenting) ("While the court did not make those ['extraordinary circumstances' and 'best interest'] findings on the record, subsection (b) does not impose that requirement, and the findings are certainly implied in the court's rulings, as they would be in other cases." (citing *Sixth RMA Partners* and other cases)).

There is little Supreme Court guidance on what constitutes "extraordinary circumstances." *See In re C.T.*, 491 S.W.3d 323, 329–30 (Tex. 2016) (orig. proceeding) (Guzman, J., dissenting from denial of rehearing) ("'[E]xtraordinary circumstances' was a 2005 addition to the statute . . . and little case law has developed to explain the circumstances that qualify. . . . This Court, however, has not yet provided guidance on this matter. . . . This Court should provide guidance about the circumstances that can constitute 'extraordinary circumstances' warranting extension of the dismissal deadline under the statute."). However, extensions often allow parents to meet the Department's conditions for reunifying them with their children. *See J.G.K.*, 2011 WL 2518800, at *35; *Melton v. Texas Dep't of Fam. & Protective Servs.*, No. 03-08-00168-CV, 2010 WL 668917, at *2 (Tex. App.—Austin Feb. 25, 2010, no pet.) (mem. op.); *In re A.T.S.*, No. 12-07-00196-CV, 2008 WL 2930392, at *17 (Tex. App.—Tyler July 31, 2008, no pet.) (mem. op.). But even successfully completing Department-required services, without more, can still fall short of "extraordinary circumstances." *See In re J.D.*, No. 02-11-00328-CV, 2012 WL 3115804, at *3 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) ("Mother does not explain how allegedly completing her services and how allegedly

18

moving away from C.O. constitute extraordinary circumstances, nor does she cite to any case law showing that any other court has found this type of circumstances to constitute extraordinary circumstances.").

More broadly, the focus of the "extraordinary circumstances" and "best interest" inquiries is the child's needs. *See In re R.J.*, No. 12-20-00201-CV, 2020 WL 7042607, at *1 (Tex. App.—Tyler Nov. 30, 2020, pet. denied) (mem. op.); *In re M.S.*, 602 S.W.3d 676, 679 (Tex. App.—Texarkana 2020, no pet.). The statute "exists to facilitate permanence and stability in the lives of children." *In re J.O.*, No. 07-16-00030-CV, 2016 WL 2753911, at *1 (Tex. App.— Amarillo May 9, 2016, no pet.) (mem. op.). The burden is on the movant to provide evidence supporting a determination that the trial court abused its discretion by denying the motion for an extension. *See id.*; *D.W.*, 249 S.W.3d at 647–48; *see also M.S.*, 602 S.W.3d at 679–80 (holding that trial court did not abuse its discretion in denying parent's motion in part because motion failed to focus on child's needs and parent had past criminal convictions and more pending charges).

**B.     There is no factual record about Child's needs on which we can find an abuse of discretion in the denial of the extension.**

Grandmother made no offer of evidence of extraordinary circumstances before trial started, her motion did not mention the grounds that she now raises on appeal, it was not accompanied by any evidence, and no hearing was held on the motion. Instead, she relies solely on evidence offered during trial—after the trial court implicitly denied her motion for an extension. *See In re J.M.*, 603 S.W.3d 163, 167 n.5 (Tex. App.—Texarkana 2020, no pet.) (citing *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003)); *cf. J.G.K.*, 2011 WL 2518800, at *35 ("[T]he plain language of section 263.401 does not require the trial court to conduct a hearing before granting an extension. Thus, we must presume that the legislature did not intend to require a hearing before the trial court retains a case on its docket pursuant to section 263.401(b)." (internal citation

omitted)).  Because the evidence admitted at trial came after the trial court's denial of the motion, Grandmother may not rely on that evidence as grounds for reversing the trial court's denial of her motion.  *See, e.g.*, *Dallas Morning News v. Fifth Ct. of Appeals*, 842 S.W.2d 655, 658 (Tex. 1992) (review for abuse of discretion is based on "what was before the court" whose decision is under review "when it issued the order" being reviewed); *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (trial court abuses its discretion by making ruling "based solely on evidence that was not properly before the court"); *State v. Arthur*, 435 S.W.2d 577, 580 (Tex. App.—Houston [14th Dist.] 1968, no writ) (holding that trial court did not abuse its discretion based on "the evidence before the court at the time of its ruling" and in face of contrary assertions by party's trial counsel "when there was no evidence to substantiate" those assertions).

On this record, we cannot find an abuse of discretion.  *See M.S.*, 602 S.W.3d at 679–80; *J.O.*, 2016 WL 2753911, at \*1; *D.W.*, 249 S.W.3d at 647–48.  We overrule Grandmother's first issue.

## II. The evidence was legally and factually sufficient to support the trial court's best-interest determination for conservatorship.

In her second issue, Grandmother contends that the evidence was legally and factually insufficient to support the trial court's best-interest finding that the Department—and not Grandmother—should be Child's managing conservator.  "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."  Tex. Fam. Code § 153.002; *see also id.* § 161.207(a) (providing for appointment of "a suitable, competent adult"; the Department; or "a licensed child-placing agency" as child's managing conservator when both parents' parental rights to child have been terminated).  We review this conservatorship decision for an abuse of discretion, reversing only if the trial court's ruling was arbitrary and unreasonable; for legal sufficiency and

20

factual sufficiency of the evidence; under the factors listed in Family Code section 263.307(b)[4]; and under the *Holley* factors. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *D.J. v. Texas*

---

[4] That statute provides these factors for consideration:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

21

*Dep't of Fam. & Protective Servs.*, No. 03-19-00448-CV, 2019 WL 5793118, at \*2–3 (Tex. App.—Austin Nov. 7, 2019, pet. denied) (mem. op.). The conservatorship decision is not subject to the clear-and-convincing-evidence requirement that terminations of parental rights are subject to. *J.A.J.*, 243 S.W.3d at 616. Instead, the quantum of proof needed in the trial court is simply a preponderance of the evidence. *Id.* Also, there is no statutory presumption that a grandparent should be preferred as managing conservator over the Department or other non-parents. *Id.* at \*2; *A.C.*, 394 S.W.3d 644.

We consider the following factors to be neutral here because of a lack of relevant evidence under the respective factor: the first, eighth, and ninth *Holley* factors and subsections (4), (5), (6), (9), and (13) of Section 263.307(b).

Under the third *Holley* factor and subsections (3), (7), and (8) of Section 263.307(b), the Department offered evidence that one of Mother's older two children accused Grandmother of having "beat[en]" him. It also offered evidence of her criminal history, including driving while intoxicated, felony forging a prescription, and an arrest for assault family violence though Grandmother denied any physical abuse. As discussed above, there was also evidence that Grandmother would not be protective of Child by keeping Mother, who has used illegal drugs, away from him, especially when Mother is not on her medications, and that Grandmother tended to minimize the threat that Mother's mental illnesses posed to Child. While Grandmother offered evidence in rebuttal—that she forbade Mother from seeing Child and asked

---

(E) protection from repeated exposure to violence even though the violence may not be directed at the child; and

(F) an understanding of the child's needs and capabilities; and

(13) whether an adequate social support system consisting of an extended family and friends is available to the child.

her to move to a different city, believing her to be an unfit parent—on this mixed factual record, there was sufficient evidence to support the trial court's determinations. We therefore cannot say that the trial court's decision was arbitrary and unreasonable. *See J.A.J.*, 243 S.W.3d at 616.

Under the second and fourth *Holley* factors and subsections (1) and (12)(A)–(F) of Section 263.307(b), the Department offered evidence of Child's health problems and his visits in Grandmother's home. As discussed above, Child was diagnosed at birth with pulmonary hypertension, needed oxygen treatments while in the prison hospital, and still needs frequent oxygen treatments. To provide Child with those treatments and to provide for his other long-term needs, his foster parents received appropriate training and have been successfully meeting his medical needs. Despite his medical needs, Child would return from visits with Grandmother smelling of cigarette smoke. Grandmother admitted to smoking during Child's visits, but she said that she only did so outside on her porch. She testified that she knew how to administer Child's oxygen treatments and knew that he needed them frequently, both day and night. She also testified about her own adoption license, emergency-medical training, two approved home studies from non-Department reviewers, and willingness to complete further training or services as needed to better care for Child. As above, this mixed record allowed the trial court, in its discretion as factfinder, to resolve the disputed facts in favor of its ultimate decision. We therefore cannot say that the trial court's decision was arbitrary and unreasonable. *See J.A.J.*, 243 S.W.3d at 616.

Under the fifth, sixth, and seventh *Holley* factors and subsections (10) and (11) of Section 263.307(b), the Department offered evidence about the foster parents' home life with Child and about Grandmother's home. The foster parents have created a bond with Child, especially because theirs is the only home in which Child has lived, save for visitations elsewhere. Theirs is a "primary medical needs home," and they have been trained to meet Child's medical

23

needs and are successfully meeting all of his emotional and physical needs. By contrast, two different home studies of Grandmother's home rejected her as a placement either because of a tendency to minimize Mother's parental unfitness or because of a lack of forthrightness about Grandmother's own criminal history. Grandmother offered evidence in rebuttal, for example, her two approved home studies, adoption license, and financial ability to care for Child. Ultimately, however, we conclude that the trial court was presented with a mixed factual record upon which it, as factfinder, could exercise its discretion to resolve disputed facts in favor of its ultimate decision. We therefore cannot say that the trial court's decision was arbitrary and unreasonable. *See J.A.J.*, 243 S.W.3d at 616.

In summary, the trial court had before it a mixed factual record. We conclude that the evidence was both legally and factually sufficient to support the trial court's finding that appointing the Department—and not Grandmother—as Child's managing conservator was in Child's best interest. We overrule Grandmother's second issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Triana, and Kelly
  Concurring Opinion by Justice Triana

Affirmed

Filed: March 3, 2021